Mr. Justice DANIEL
 

 delivered the opinion of the court.
 

 The defendant in error, as a citizen of the* State of Illinois,! instituted an action of ejectment against the plaintiff in the court above mentioned, and obtained a verdict and judgment against him for a tract of land, described in the declaration as a tract of land situated in St. Louis county, being the same tract'of land known as United States survey No. 2,489, and located by virtue of a New Madrid certificate No. 105, and containing six hundred and forty acres.
 

 Both the plaintiff and defendant in the Circuit Court trace the origin of their titles to the settlement claim of one James Y. O’Carroll, who, it is stated, obtained permission as early as the 6th of September, 1803, from the Spanish authorities, to settle on the, vacant lands in Upper Louisiana, and who, in virtue of that permission, and on proof by one Ruddell of act ual inhabitancy and cultivation prior to the 20th of December, 1803,. claimed the quantity of one thousand arpens of land near the Mississippi, in the district of New Madrid. Upon this application, the land commissioners, on the 13th of March, 1806, made a decision by which they granted to the claimant one thousand arpens of land, situated as aforesaid, provided so much be found vacant there.
 

 On the 14th of December, 1810, the commissioner,s, acting again on the claim of O’Carroll for one thousand arpens, declare that the- board grant, to James Y.-O’Carroll three hundred and fifty acres of land, and order that the same be surveyed as nearly in a square as may be, so as to include his improvements. The claim thus allowed by the commissioners was, by the operation of the'4th section of the act of Congress approved March 3,1813, enlarged and extended to the quantity of six hundred and forty acres. (Vide Stat. at Large, p. 813, vol. 2.)
 

 In the year 1812, a portion of the lands in the county of New Madrid having been injured by earthquakes, Congress, by an act approved on the 17th of February, 1815, provided that
 
 *483
 

 “
 
 any person or persons owning lands in the county of New Madrid, in the Missouri Territory, with the extent the said county had on the 10th day of November, 1812, and whose lands have been materially injured by earthquakes, shall be and they hereby are authorized to locate the like quantity of land on any of the public lands of the said Territory, the sale of which is authorized by law.” (Stat. at L., vol. 3, p. 211.)
 

 On the 30th of November, 1815, the recorder of land titles for Missouri, upon evidence produced to him that the six hundred and forty acre grant to James Y.' O’Carroll had been materially injured by earthquakes, in virtue of the act of Congress of 1815, granted'to said O’Carroll New Madrid certificate No. 105, .by which tbe grantee was authorized to locate six hundred and forty acres of land on any of the public lands in the Territory of Missouri, the sale of which was authorized by law. Upon the conflicting claims asserted under this New Madrid certificate, and upon the ascertainment of the locations attempted- in virtue of its authority, this controversy has arisen.
 

 Each party to this controversy professes to deduce title from the settlement right of O’Carroll, through mesne conveyances proceeding from him. "With respect to the construction of these conveyances, several prayers have been presented, by both plaintiff and defendant, and opinions as to their effect have been expressed by the Circuit Court;.hut as to the rights really conferred, or intended to be conferred, by these transactions, it would; according to thé view of this cause taken by this court, be not merely useless, but premature and irregular to discuss, and much more so to undertake to determine them.
 

 This is an attempt to assert at law,' and by a legal remedy, a right to real property — an action of ejectment to establish the right of possession in land.
 

 That the plaintiff in ejectment must in all cases prove a
 
 legal
 
 title to the premises in himself) at the time of the demise laid in the declaration, and that evidence of an
 
 equitable
 
 estate will not be sufficient fpr .a recovery, are principles so elementary and so familiar to the profession as to render unnecessary the citation of authority in support of them. Such authority may,
 
 *484
 
 however, be seen in the cases of Goodtitle
 
 v.
 
 Jones,
 
 7
 
 T. R., 49; of Doe
 
 v.
 
 Wroot, 5 East., 132; and of Roe
 
 v.
 
 Head, 8 T. R., 118. This legal title the plaintiff must establish either upon a connected documentary chain of evidence, or upon proofs of possession of sufficient duration to warrant the legal conclusion of the existence of such written title.
 

 By the Constitution of the United States, and by the acts of Congress organizing the Federal courts, and defining and in vesting the jurisdiction of these tribunals, the distinction between common-law and equity jurisdiction has been explicitly declared and carefully defined and established. Thus, in section 2, article 3,, of the Constitution, it is declared that “ the judicial power of the United States shall extend to all-cases in
 
 law
 
 .and'
 
 equity
 
 arising under this Constitution, the laws of the United States,” &c.
 

 .In the act of Congress “to establish the judicial courts of the United States,” this distribution of law and equity powers is frequently referred to; and by the 16th section of that act, as if to place the distinction between those powers beyond misapprehension, it is provided “ that suits in equity shall not be maintained in either of the courts of the United States in any case where plain, adequate, and complete remedy may be had at law,” at*the same time affirming and separating the two classes or sources of judicial authority. In every instance in which this court has expounded the phrases, proceedings at the common law and proceedings in equity, with reference to the exercise of the judicial powers of the courts of the United State's., they will'be found to have interpreted the former as signifying the application of the definitions-and principles.and rules of the common law to .rights and obligations' essentially legal; and the latter, as meaning the administration with reference to equitable as contradistinguished, from legal rights, of the equity law as défined and enforced by the Court of Chancery in England.
 

 In the case of
 
 Robinson v.
 
 Campbell, 3 Wheat., on page 221, this court have said: “By the laws of the United States, the Circuit Courts have cognizance of all suits of a civil nature at common law and in equity, in cases which fall within the lim
 
 *485
 
 its prescribed by those laws. By the 24th section of the judiciary act of 1789 it is provided, that the laws cf the several States, except where the Constitution, treaties, or statutes of the United States, shall otherwise provide, shall he regarded as rules of decision in trials at common law in the courts of the United States, in cases where they apply. The act of May, 1792, confirms the modes of proceeding then used at common law in the courts of the United States, and declares that the modes of proceeding in suits in equity, shall be according to the principles, rules, and usages, which belong. to courts of equity, .as contradistinguished from courts of common láw, except so far as may have been .provided for by the act to establish the' judicial courts of the United States. It is material to consider whether it was the intention.of Congress by these provisions to confine the courts of the United States, in their mode of administering relief, to the same remedies, and those only, with all their incidents, which existed in the courts of the respective States; in other words, whether it was their intention to give the party relief
 
 at law,
 
 where the practice of the State courts would give it, and
 
 relief in. equity only
 
 when, according to such practice, a plain, adequate, and complete remedy could not be had at law ? In some States in the Union, no court of chancery exists to. administer equitable relief. In some of those States,, courts of law recognise arid enforce in suits at law all equitable rights and claims which a court of equity would recognise and enforce; in others, all relief is denied, and such equitable claim's and rights are to be considered as mere nullities at law. A. construction, therefore, that would adopt the State practice in all its extent, would at once extinguish in such States the exercise of equitable jurisdiction. The acts of Congress, have distinguished between remedies at common law and equity, yet this construction would confound them. The court therefore think, that to effectuate the purposes of the Legislature, the remedies in the courts of the United States are to he at common law or in equity — not according to the practice in the State courts, but according to the principles of common law and equity, as distinguished and defined in that country from, which
 
 we
 
 derive our knowledge of those principles.”
 

 
 *486
 
 In the case of Parsons
 
 v.
 
 Bedford et al., 3 Peters, on pp. 446, 447, this court, in' speaking of the seventh amendment of the Constitution, and of the state of public sentiment which demanded and produced that amendment, say:
 

 “The Constitution had declared, in the 3d article, that the judicial power, shall extend to all cases
 
 in law and equity
 
 arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority, &c. It is well known that in civil suits, in courts of equitjr and admiralty, juries do not intervene, and that courts of equity use the trial by jury only in extraordinary cases. When, therefore, we find that the amendment' requires that the right of trial by jury shall be preserved in- suits at common law, the natural conclusion is, that the distinction was present in the minds of the framers of the amendment. By
 
 common
 
 law, they meant what the Constitution denominated in the 3d article law, not merely
 
 suits
 
 which the common law recognised among its old and settled proceedings, but suits in which
 
 legal
 
 rights were to be ascertained and determined, in contradistinction to those where
 
 equitable rights
 
 alone were recognised and equitable remedies administered.”
 

 The same doctrine is recognised in the case of Strother
 
 v.
 
 Lucas, in 6 Peters, pp. 768, 769 of the,volume, and.in the case of Parish
 
 v.
 
 Ellis, 16 Peters, pp. 453, 454. So, too, as late as the year 1850, in the case of Bennett
 
 v.
 
 Butterworth, reported in the 11th of Howard, 669, the Chief Justice thus states the law- as applicable to the question before us:
 

 “ The common law has been adopted in Texas, but the forms and rules of pleading in common-law cases have been abolished, and the parties are at liberty to set out their respective claims and defences in any form that will bring them be-, fore the court; and, as there -is no distinction in its courts between cases at law and in equity, it has been insisted in this case, on behalf of. the defendant in error, that this court may regard the plaintiff’s petition either as a declaration at law or a bill in equity. Whatever may be the laws of Texas in this respect, they do not govern the proceedings in 'the courts of the United States; and, although the forms of proceedings
 
 *487
 
 and practice in the State courts have been adopted in the District Court, yet the adoption of the State practice must not be understood as confounding the principles of law and equity, nor as authorizing legal and equitable claims to be'blended together in one suit. The Constitution of the United States, in creating and defining the judicial power of the General Government, establishes this distinction between law and equity, and a party who claims a legal title must .proceed at law, and, may. undoubtedly proceed according to the forms of practice in such cases in the State court. But if the claim be an equitable. one, he must proceed according to the rules which this court has prescribed, regulating proceedings in equity in the courts of the United States.”
 

 The authorities above cited are deemed decisive against the right of the plaintiff in the court below to a recovery upon the facts disclosed in this record, which show that the action in that court was instituted upon an equitable and not upon a legal title. With the attempt to locate O’Carroll’s New Madrid warrant No. 150, in addition to its interference with what was called the
 
 St. Louis common,
 
 there were opposed five conflicting surveys. In consequence of this state of faets, the Commissioner of the General Land Office, on the 19th of March, 1847, addressed to tbe surveyor general of Missouri the following instructions:
 
 “
 
 If, on examination, it should, satisfactorily appear- to you that- the lands embraced by said surveys were at the date of O’Carroll’s location reserved for said claims, the O’Carroll location must yield to them, because such land is interdicted under the New Madrid act of the 17th of February, 1815; but if, at the time of location, either of the tracts Was not reserved, but was such land as was authorized by the New Madrid act to be located, the New Madrid claim No. 105 will of course hold valid against either tract in this category. The fact on this point can be best determined by tbe surveyor general from the records of his office, aided by those of the recorder. If there be no valid claim to any por, tion off
 
 thexesidue
 
 of the O’Carroll claim, and such residue was such land as was allowed by the New Madrid act of 17th of February, 1815, to be located, on the return here of a proper
 
 *488
 
 plat and patent certificate 'for said residue, a patent will is sue.”
 

 At this point the entire action of the land department of the Government terminated. No act is shown by which the extent of the St. Louis common, said to be paramount, was áscertained; no information supplied with respect to the validity or extent, of the conflicting surveys,' as called for by the Commissioner; no plat or patent certificate, either for the whole of the warrant or for any residue to be claimed thereupon, ever returned to. the General Land Office, and no.patent issued. The plaintiff in the Circuit Court founded his claim exclusively and solely upon the New Madri'd warrant.
 

 The inquiry then presents itself, as to who holds the
 
 legal
 
 title to the land in question. The answer to this question is, that the title remains in the original owner, the Government, .until it is invested by the Government in its grantee. This results from the nature of the case, and-is the rule affirmed hy this court in the case pf Bagnall et al.
 
 v.
 
 Broderick, in which it is declared, “that Cougre'ss has the sole power to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the Government in reference to the public lands declares the patent to be the superior and conclusive evidence of the
 
 legal title.
 
 Until it issues, the fee is in the Government, which by the patent passes to the grantee, and he is entitled to enforce the possession in ejectment. (13 Peters, p. 436.)
 

 A practice has prevailed in some of the States (and amongst them the' State of Missouri) of permitting the action of ejectment to be maintained upon warrants for land, and upon other titles not complete or legal in their character; but this practice, as was so explicitly ruled in the case of Bennett
 
 v.
 
 Butterworth, (11 How.,) can in no wise affect the jurisdiction of the courts of the United States, who, both by the Constitution and by the acts of Congress, are required to observe the distinction between legal and equitable rights, and to enforce the rules and principles of decision appropriate to each.
 

 The judgment of the Cir<3ui|Uourt is to be reversed with costs.