## OAKSMITH'S LESSEE *v.* JOHNSTON.

1. In this country there can seldom be occasion to invoke the presumption of a grant from the government, except in cases of very ancient possessions running back to colonial days, as, since the commencement of the present century, a record has been preserved of all such grants, and of the various preliminary steps up to their issue; and provision is made by law for the introduction of copies of the record when the originals are lost.

2. In ejectment for a lot in Washington City, both parties admitted that the original title was in the United States. The plaintiff relied principally upon evidence of title arising from uninterrupted and exclusive possession by his lessor, and the parties through whom he claims from 1828 to 1867. During the latter year the defendant entered. He traced title through a conveyance of the mayor of Washington, executed in October, 1866, in completion of a sale made under the act of Congress of May 7, 1822 (3 Stat. 691), and an ordinance of the city of the same year, creating a board of commissioners to carry the act into effect, and direct the sales of lots. The act required the deeds executed to the purchasers by the mayor to be recorded among the land-records of the county of Washington within the time prescribed for the recording of conveyances of real estate. The ordinance provided that the board should keep regular minutes of their acts and proceedings, and lay the same before the board of aldermen and common council at the commencement of every session of the council. The records and minutes were not produced, nor proof of their contents offered by the plaintiff. *Held*, that no presumption can legitimately arise that any other deed of the demanded premises was executed by the mayor than the one put in evidence, and that the possession created no title upon which the plaintiff can recover.

ERROR to the Supreme Court of the District of Columbia.

*Mr. Edward Lander* and *Mr. William A. Meloy* for plaintiff in error.

*Mr. A. G. Riddle, contra.*

MR. JUSTICE FIELD delivered the opinion of the court.

This was an action of ejectment to recover a parcel of land situated in the city of Washington, consisting of the south half of lot fourteen in reservation B, and a portion of the adjoining lot thirteen. For this latter portion the plaintiff obtained judgment; and no question with respect to it is here raised. The only contention in this court relates to the other portion of the demanded premises, — the south half of lot fourteen. To recover this portion, the plaintiff relied principally upon evidence of title arising from the possession of the premises by

the lessor of the plaintiff, and parties through whom he claims, for a period of nearly forty years. It was shown, that, as early as 1828, one Thomas Hughes occupied and used the premises, and that he continued from that time to occupy and use them exclusively, either in person or by tenants, until his death in 1837; that by his will he devised his interest and estate in them to his daughter Anna, who, upon his death, continued in like manner in their occupation and use until the entry of the defendant in 1867, having erected in the mean time a brick building thereon. The lessor of the plaintiff, Oaksmith, is the trustee of Anna's estate.

The defendant traced title to the premises from the United States through a conveyance of the mayor of Washington, executed in October, 1866, in completion of a sale made by commissioners under the act of Congress of May 7, 1822, 3 Stat. 691, and an ordinance of the city of the same year passed to carry that act into effect. It is conceded, that, previous to the sale, the title was in the United States.

It appeared in evidence that the sale was made in September, 1822, to one Henry Weightman, to whom a bond was given for a conveyance upon payment of the purchase-money; that in June, 1830, the purchase-money was paid, and that, in 1832 or 1833, the purchaser permitted Hughes to occupy the premises as his tenant; that in 1853 the purchaser died, leaving Roger Weightman his only surviving heir; and that to him the mayor of the city, in October, 1866, executed the conveyance, and that during the same year he conveyed to the defendant.

It also appeared in evidence that the purchase of the premises by Henry Weightman in 1822 was made in trust for Roger Weightman, who, as early as 1830, became the assignee of the bond, and paid the purchase-money; and that the conveyance of the mayor to him, in October, 1866, was obtained upon a representation that the bond had been lost; that Roger Weightman had also purchased the adjoining lot thirteen, and in June, 1830, had received a conveyance of the same from the mayor of Washington, and in March, 1837, had conveyed to Hughes that portion of the lot which the plaintiff recovered in this action.

Upon this evidence, assuming it to have established all that

it tended to prove, the plaintiff asked of the court several instructions to the jury, amounting, when divested of some repetitions, substantially to these : —

1st, That the jury might presume that Roger Weightman assigned the bond for a conveyance to Thomas Hughes during his life ; and that the mayor of the city executed a conveyance of the premises either to Hughes, or, after his death, to his devisee and daughter ; and,

2d, That the exclusive and uninterrupted possession of the premises by the devisee of Hughes for more than twenty years prior to the entry of the defendant created a title upon which the plaintiff could recover.

The court refused the instructions; and, for their refusal, error is alleged.

The objection to the first of these instructions arises from that part which relates to the presumption of a conveyance from the mayor of the city.   The title of the property, as already stated, was originally in the United States, and the mayor acted only as their agent in transferring it to the purchaser.   It was, therefore, a grant from the government which the court was requested to instruct the jury to presume.

It is undoubtedly true, as stated by counsel, that, under some circumstances, grants may be presumed from the government, as well as from individuals, in support of a long-continued possession.   The presumption in such cases arises not merely from the possibilities of the loss of documents by the common accidents of time, but from the general experience of men that property is not usually suffered to remain for long periods in the quiet possession of any one but the true owner, and that no other person will deliberately add to the value of the property by permanent improvements.

But in this country, at the present day, there can seldom be occasion to invoke the presumption of a grant from the government, except in cases of very ancient possessions running back to colonial days, as, since the commencement of the present century, a record has been preserved of all grants of the government, and of the various preliminary steps up to their issue ; and provision is made by law for the introduction of copies of the record when the originals are lost.

The act of Congress of May 7, 1822, which authorized the sale of the public reservations, embracing the property in controversy, required the deeds executed to the purchasers by the mayor of the city to be recorded among the land-records of the county of Washington within the time prescribed for the recording of conveyances of real estate; and the ordinance of the city creating a board of commissioners to carry the act of Congress into effect, and direct the sales of the property, provided that the board should keep regular minutes of its acts and proceedings, and lay the same before the board of aldermen and common council at the commencement of every session of the council. If any deed was made by the mayor of the city to Hughes or to his devisee, as the court was requested to instruct the jury to presume, the records of the county and the minutes of the commissioners would no doubt have shown the fact. But these records and minutes were not produced; and no evidence was offered that they made mention of any deed of the premises, either to Hughes or to his devisee. The absence of any evidence on this point was of itself a circumstance sufficient to justify the conclusion that the records and minutes disclosed nothing impairing, or tending to impair, the validity of the conveyance through which the defendant claims. In the absence of such evidence, no presumption could legitimately arise that any other deed was executed by the mayor than the one produced. The court, therefore, properly refused the instruction asked.

The long uninterrupted possession of the premises by the devisee, and the valuable improvements made by her, might have justified the presumption of a transfer of the bond from Roger Weightman. But such transfer, if established, would not have availed the plaintiff: it would only have disclosed the possession of an equitable right to a conveyance, which a court of chancery might enforce by compelling a transfer of the legal title from the defendant, if he purchased with notice of the plaintiff's equity, or by decreeing compensation from Roger Weightman, if he conveyed the title to a *bona fide* purchaser without notice. But in the action of ejectment, in the Federal courts, the legal title must control, and to another forum the plaintiff must look for the enforcement of any equitable rights he may possess.

The legal title being in the United States, the Statute of Limitations raises no bar to the action. Mere possession of the land, though open, exclusive, and uninterrupted for twenty years, creates no impediment to a recovery by the government, and of course none to a recovery by one who within that period receives its conveyance. In *Burgess* v. *Gray*, 16 How. 48, the plaintiff and those through whom he claimed had been in possession of the land, for which the action was brought, for more than half a century; and, among other grounds, he relied upon this long-continued possession to recover against defendants, who had entered under title derived from the United States. But the court said, " The mere possession of public land without title will not enable the party to maintain a suit against any one who enters on it; and, more especially, he cannot maintain it against persons holding possession under title derived from the proper officers of the government. He must first show a right in himself before he can call into question the validity of theirs." The second instruction was, therefore, properly refused.                    *Judgment affirmed.*