## BEATTY v. WILSON.

(Circuit Court, D. Kansas, First Division. March 6, 1908.)

No. 8,578.

1. COURTS—FEDERAL COURTS—LEGAL AND EQUITABLE JURISDICTION.

Only legal rights can be enforced in an action at law in the federal courts, regardless of the rule of decision in the courts of the state; the distinction between actions at law and suits in equity in the federal courts being fundamental and jurisdictional.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 913.]

2. SAME—EJECTMENT—EQUITABLE TITLE.

An assignee of a school land certificate, to whom no patent had been issued, could not maintain ejectment in the federal courts to recover the land from a subsequent purchaser from the state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 913 ]

3. PUBLIC LANDS—LANDS OF STATE—SCHOOL LANDS—TRANSFER—RIGHTS OF PURCHASER.

Under Gen. St. Kan. 1901, § 6347, as amended by Laws 1903, p. 723, c. 477, § 1, and Gen. St. 1905, §§ 6880, 6888, providing for the sale of school lands by the state, a purchaser prior to the issuance of the patent acquires only an equitable interest.

Mulvane & Gault, D. R. Hite, Geo. F. Beatty, J. B. Larimer, A. G. Wolfenbarger, and Berge, Morning & Ledwith, for plaintiff.

Frank Doster and Langwade & Carter, for defendant.

POLLOCK, District Judge. This is an action at law in the nature of ejectment, brought by plaintiff against defendant to recover a tract of property situated in Decatur county, this state. A jury was waived and the cause tried and submitted to the court. This is one of a series of cases brought in this court by the plaintiff and others, involving substantially the same matters of fact and law. By stipulation of parties a jury in all has been waived, the cases tried and submitted, and a decision of one is a determination of all. The facts necessary to a decision of the controversy are as follows:

On October 15, 1884, one I. L. Peck purchased from the state the tract of school land in Decatur county now in controversy, under the terms and provisions of the law relating to the disposition of the school lands of the state. Ten per cent. of the purchase price was paid, a bond given, and the purchaser received the usual certificate of purchase, providing for the deferred payments and for a patent upon the completion of the contract, which certificate reads as follows:

"State of Kansas, Decatur County—ss.:

"Whereas, on the 15th day of October, A. D. 1884, I. L. Peck purchased from the state of Kansas the following described land, to wit: The northeast quarter of section No. eleven, in township No. five, range No. twenty-nine west, containing one hundred and sixty acres, under the provisions of 'An act to provide for the sale of the school lands,' approved February 22, 1864, and acts of the Legislature of the state of Kansas amendatory and supplemental thereto, at and for the sum of four hundred and eighty dollars;

"And whereas, the said I. L. Peck has paid to the county treasurer of Decatur county the sum of forty-eight dollars:

"Therefore, the said I. L. Peck, his heirs or assigns, will be entitled to a patent from the state of Kansas to the land within described on the 15th day of October, A. D. 1904, upon the payment of the sum of four hundred and thirty-two dollars, that being the balance of the purchase money therefor, payable in twenty years, or in installments of not less than twenty-five dollars each, with interest upon the balance unpaid at the rate of six per cent. per annum.

"The purchaser can at any time procure his patent upon the payment of the purchase money, with six per cent. interest from the day of sale until the day of last payment."

This certificate, by mesne assignments and transfers indorsed thereon and of record in the office of the county clerk of Decatur county, passed to the plaintiff in this action. The statutory provisions of the

state in effect at the time such contract of purchase and sale was made, in so far as material, read as follows:

Section 6347, Gen. St. 1901, as amended by section 1, c. 477, p. 723, Laws 1903:

"Any person purchasing such school land shall pay to the treasurer of the county in which the same is situated, one-tenth of the amount of the purchase money, taking therefor a receipt, which he shall present to the county clerk, together with a bond in double the amount of the purchase money unpaid, conditioned that he will not commit waste upon said land, and that he will pay the balance of said purchase money in twenty years, and interest to be paid annually thereon at the rate of six per cent. per annum, as the same becomes due: Provided, that the purchaser may pay the balance of the purchase money at any time, or in installments of not less than twenty-five dollars; provided, also, any person having purchased such land and made partial payment of the purchase money, and who is not in default in the payment of interest due upon such purchase money or taxes upon the land, or who, being in default and interest past due, and taxes past due upon the land, will pay up in full all such delinquent interest and taxes, may, upon surrendering the certificate of purchase to the county clerk of the county in which the said land is situated, take out a new certificate of purchase under the provisions aforesaid, and upon presenting a new bond in double the amount of the purchase money remaining unpaid, said bond conditioned the same as the bond aforementioned in this section; and provided, further, that the owner and holder of any certificate or certificates for the purchase of school lands upon which interest has been paid for more than fifteen years, may surrender the same to the county clerk of the county in which said land is situate, and upon such surrender the county clerk shall issue a new certificate or certificates, due in twenty years, with the option of prepayment, on which interest is to be paid at the rate of four per cent. per annum, and subject to all the other provisions of the act relating to school lands."

### Section 6880, Gen. St. 1905:

"The county clerk shall thereupon enter the amount of the purchase money of the land, the amount paid upon the same, in a book kept for that purpose, and shall charge the same to the county treasurer in the records of the county, and shall issue to the purchaser a certificate, under the seal of his office, showing the amount paid, the amount due and the time when due, with interest, and that upon the payment of said amount when due, with interest, he will be entitled to a patent to said land. It shall be the duty of the Attorney General to prepare a proper form for said certificate for the sale of said land, so as to protect the rights of the state and of the purchaser, his heirs and assigns."

### Section 6888, Gen. St. 1905:

"If any purchaser of school lands shall fail to pay the annual interest when the same becomes due, or the balance of the purchase money when the same becomes due, it shall be the duty of the county clerk of the county in which such land is situated immediately to issue to the purchaser a notice in writing, notifying such purchaser of such default; and if such purchaser fail to pay or cause to be paid the amount so due, together with the costs of issuing and serving such notice, within sixty days from the service thereof, the said purchaser, and all persons claiming under him, will forfeit absolutely all right and interest in and to such land under said purchase, and an action will be brought to eject said purchaser, and all persons claiming under him, from such land. It shall be the duty of said county clerk to include in such notice all tracts of land sold to the same purchaser, and on which default in any such payments then exist. The notice above provided for shall be served by the sheriff of the county by delivering a copy thereof to such purchaser if found in the county, also to all persons in possession of such land: if such purchaser cannot be found, and no person is in possession of said

land, then by posting the same up in a conspicuous place in the office of the county clerk. And in case such land or any part thereof has been sold for taxes, a copy of such notice shall be delivered to such purchaser at tax sale, if a resident of the county. Said sheriff shall serve such notice and make due return of the time and manner of such service, within fifteen days from the time of his receipt of the same. The sheriff shall be entitled to the same fees and mileage for serving the same as allowed by law for serving summons in civil actions. If such purchaser shall fail to pay the sum so due, and all costs incident to the issue and service of said notice, within sixty days from the time of service or posting of such notice as above provided, such purchaser and all persons claiming under him, shall forfeit absolutely all rights and interest in and to such land under and by virtue of such purchase; and the county attorney shall proceed to eject him, and all persons claiming under him, from said premises, if in possession. * * *"

Section 6887, Gen. St. 1905:

"On presentation of a certificate of the county clerk, showing that any person has paid the full amount of the purchase money, and all interest due, for any portion of said school lands, with a certificate thereon, indorsed by the Auditor of State, showing that he has charged the county treasurer of the county where the land is situated, with the full amount of the purchase money mentioned in said certificate, the Governor of the state shall issue a patent to the purchaser, his heirs, or assigns, for the same, which said patent shall convey to the patentee a full title, in fee simple, to said lands."

The contract made by Peck with the state for the purchase of this land was not kept and performed by Peck or his assignees of the certificate of purchase, and on September 19, 1899, the county clerk of Decatur county issued to Peck and to the last assignee of the certificate, as by the law provided, the following notice:

"County Clerk's Office,	Oberlin, Kansas, Sept. 19, ——.
"Mr. I. L. Peck, J. I. Case Threshing Machine Co., Last Assignee:

"You are hereby notified that the annual interest on the balance of the purchase money for N. E. ¼ Sec. 11—5—29, school land, is due, and unless you pay or cause to be paid the amount due, together with the costs of issuing and serving this notice, within sixty days from service of this notice, you and all persons claiming under you will forfeit absolutely all right and interest in and to such land under such purchase, and an action will be brought to eject you and all persons under you from said land.
"[Seal.]	[Signed]	W. H. Andrews, County Clerk."

The return of the sheriff who made service of this notice, as indorsed thereon, reads as follows:

"Received this writ Sept. 19, 1899. 30th day of Sept. 1899, having made diligent search, I cannot find any of the within-named persons in Decatur county, Kansas: I. L. Peck, Case Threshing Machine Co.—they being non-resident.	H. A. Griffith, Sheriff,
"By John Haywood, Deputy."

This return fails to show a compliance with the above-quoted provisions of the law as to the manner of service of notice of forfeiture. However, it is stipulated by the parties in the agreed facts, if competent as evidence, as follows:

"That the sheriffs making service of said forfeiture notices or the county clerks of the several counties will testify that in all cases where personal service of said forfeiture notices was not made the said notices were posted by the sheriff in a conspicuous place in the county clerk's office, and the sheriff will testify that in each of said cases where notices were posted he drove to and over the lands and that no one could be found in possession

thereof, and that the persons named in the notices could not be found in the county in which the lands were situated."

On December 1, 1899, there was entered on the appropriate records in the office of the county clerk of Decatur county a declaration of forfeiture of the rights of Peck and his assignees in the land in question. Thereafter, and on the 23d day of January, 1902, the tract of land in question was again offered for sale in accordance with the provisions of law, and was purchased by defendant, who received a certificate of purchase and went into possession of the property, and has in all things kept and performed his contract of purchase with the state. It is stipulated in the agreed facts that the holder of the first certificate of purchase had knowledge of the purchase by defendant, his entry on the land, and the making of improvements thereon, and did not protest. The legal title to the land in controversy at all times was and is now vested in the state.

On this state of facts it is the contention of plaintiff that the attempted forfeiture of the contract rights of Peck with the state in the land in question, to which plaintiff has succeeded by assignment of the certificate, is void and of no effect, because the notice of such forfeiture is not shown by the return of the officer to have been served as provided by the law, and, as time of payment is not made of the essence of the contract between Peck and the state, therefore, notwithstanding the default in payment to the state by the owner and holder of the certificate of purchase in accordance with the terms of the contract, yet plaintiff, as the holder of such certificate, has such rights in the land as will enable him to bring and maintain this action against defendant, who purchased from the state with constructive notice made by the public records of the county of the contract rights of Peck and his assignees in the land, and the manner in which the forfeiture of such contract rights was attempted to be made by the state.

It is contended by defendant: (1) That, as at all times the legal title to this land has remained in the state, the plaintiff by his evidence has not shown himself possessed of such legal right to the property as will permit him to recover in this action; (2) that the attempted forfeiture by the state is not void; (3) as the assignor of plaintiff made default in performance of his contract with the state, and as he stood by and saw defendant contract with the state in relation to the land, enter thereon, and make valuable and lasting improvements without protest, he should not now be allowed to assert any right to the land, although the attempted forfeiture by the state is void.

From a careful consideration of the facts and the elaborate briefs of counsel, I am of the opinion only one question raised for decision need be considered, and that is, conceding the attempted forfeiture by the state of the contract rights of Peck and his assignees in the land, was not in compliance with the law and is insufficient to cut off and destroy such rights, are such contract rights in their character and nature such as may be asserted and maintained by plaintiff in this action at law? Of course, in the courts of the state, under the code provision abolishing all distinction between actions at law and suits in equity, the plaintiff in this action might have a recovery if he

establishes any right to the property in controversy superior to that of defendant, whether such superior right should be in its nature legal or equitable. But in this court, regardless of the rule of decision in the courts of the state, in this action at law, the only rights possible of assertion and maintenance by the plaintiff are legal rights, and for the reason that here the distinction between actions at law and suits in equity is fundamental and jurisdictional. Cook et al. v. Foley et al., 152 Fed. 41, 81 C. C. A. 237. That plaintiff may recover he must establish a legal title to the property in controversy in himself or fail of recovery.

In Hooper et al. v. Scheimer, 64 U. S. 235, 16 L. Ed. 452, Mr. Justice Catron, delivering the opinion of the court, said:

"By the statute of Arkansas an action of ejectment may be maintained where the plaintiff claims possession by virtue of an entry made with the register and receiver of the proper land office of the United States. * * * It is also the settled doctrine of this court that no action of ejectment will lie on such an equitable title, notwithstanding a state Legislature may have provided otherwise by statute. The law is only binding in the state courts, and has no force in the Circuit Courts of the Union. Fenn v. Holme, 21 How. 482, 16 L. Ed. 198."

In Fenn v. Holme, supra, Mr. Justice Daniel, delivering the opinion of the court, said:

"This is an attempt to assert at law, and by a legal remedy, a right to real property—an action of ejectment to establish the right of possession in land. That the plaintiff in ejectment must in all cases prove a legal title to the premises in himself, at the time of the demise laid in the declaration, and that evidence of an equitable estate will not be sufficient for a recovery, are principles so elementary and so familiar to the profession as to render unnecessary the citation of authority in support of them. Such authority may, however, be seen in the cases of Goodtitle v. Jones, 7 T. R. 49, of Doe v. Wroot, 5 East, 132, and of Roe v. Head, 8 T. R. 118. This legal title the plaintiff must establish, either upon a connected documentary chain of evidence or upon proofs of possession of sufficient duration to warrant the legal conclusion of the existence of such written title."

In Sheirburn v. De Cordova et al., 24 How. 425, 16 L. Ed. 741, Mr. Justice Campbell, delivering the opinion of the court, said:

"By a statute of Texas 'all certificates for head-rights, land script, bounty warrants, or any other evidence of right to land recognized by the laws of this government, which have been located or surveyed, shall be deemed and held as sufficient title to authorize the maintenance of actions of ejectment, trespass, or any other legal remedy given by law.' Hart. Dig. art. 3230. The testimony adduced by the plaintiff, it would seem, would have authorized a suit in the courts of Texas, where rights, whether legal or equitable, are disposed of in the same suit. But this court has established, after full consideration, that in the courts of the United States suits for the recovery of land can only be maintained upon a legal title. It is not contended in this case that the plaintiff has more than an incipient equity. This question was so fully considered by the court in Fenn v. Holme, 21 How. 481, 16 L. Ed. 198, that a further discussion is unnecessary."

In Foster v. Mora, 98 U. S. 425, 25 L. Ed. 191, Mr. Justice Miller, delivering the opinion of the court, said:

"In actions of ejectment in the United States courts the strict legal title prevails. If there are equities which would show the right to be in another, these can only be considered on the equity side of the federal courts."

In Oaksmith v. Johnston, 92 U. S. 343, 23 L. Ed. 682, Mr. Justice Field, delivering the opinion of the court, said:

"The long uninterrupted possession of the premises by the devisee, and the valuable improvements made by her, might have justified the presumption of a transfer of the bond from Roger Weightman. But such transfer, if established, would not have availed the plaintiff. It would only have disclosed the possession of an equitable right to a conveyance, which a court of chancery might enforce by compelling a transfer of the legal title from the defendant, if he purchased with notice of the plaintiff's equity, or by decreeing compensation from Roger Weightman, if he conveyed the title to a bona fide purchaser without notice. But in the action of ejectment, in the federal courts, the legal title must control, and to another forum the plaintiff must look for the enforcement of any equitable rights he may possess."

Did the contract of the state with Peck confer on him or his assignees any legal title or right in the land? That the legal title was reserved by and still remains in the state is conceded. Peck contracted with the state for the passage to him or his assigns of the certificate of purchase of the legal title by patent on the performance of conditions subsequently to be performed. The contract, in this respect, was by him or those claiming under him broken. The contingency upon which the grant was to be made did not happen, and therefore the patent by which the title was to pass has not issued. Whatever rights, if any, plaintiff may have as assignee of the certificate of purchase to be relieved of his default and the contract continued in force, or to a decree for performance of the contract, or to a recovery of the money paid under the contract, or to a cancellation of the attempted forfeiture by the state (however incapable of enforcement against the sovereign state such rights may be), or to a decree against the patentee on the passage of title from the state to him, are all matters of purely equitable cognizance and immaterial here. The settled rule of this court, as stated, is not without the best of reasons for its support. This is the form of action employed in this jurisdiction to settle the title to real property. Peterson v. Albach, 51 Kan. 150, 32 Pac. 917. As has been said, this court of law is without jurisdiction or power to try or determine the equitable rights of the parties to the land, and as the legal title has not passed from, but resides in, the state, any judgment herein would be utterly without effect upon such legal title; for defendant, although out of possession, could keep his contract with the state, and when performance was made receive from it a patent conveying to him full legal title to the property, which, of necessity, would prevail in a subsequent action in ejectment brought by him, based on the patent granted by the state against plaintiff then in possession without title.

The contention, made by counsel for plaintiff, that the effect of the contract of Peck with the state was to place the parties in the same relation to the property as though a conveyance of the property had been made from the state to Peck, and he had given a mortgage back to secure the deferred purchase-money payments, is, to my mind, wholly untenable and unsound. An examination of the statutory provisions above quoted, providing the manner of sale and disposition by the state of its school lands, clearly shows it was not the legislative

460        161 FEDERAL REPORTER.

intent to pass any title to the property by the contract of sale under the statute or the certificate of purchase issued. The title of the state in such school lands is expressly reserved, to be passed in the usual manner employed by a sovereign power when the conditions of the contract of sale should be performed by the purchaser. Like contracts have been held everywhere to reserve the legal title to the vendor, as is clearly seen from the cases cited by counsel for plaintiff in his brief. Courtney v. Woodworth, 9 Kan. 443; Burke v. Johnson, 37 Kan. 337, 15 Pac. 204, 1 Am. St. Rep. 252; Jones v. Hollister, 51 Kan. 310, 32 Pac. 1115. As has been seen, such contracts confer merely equitable rights, on which ejectment cannot be maintained in the federal courts. Oaksmith v. Johnston, 92 U. S. 343, 23 L. Ed. 682.

It is thought by counsel for plaintiff the case of Sims v. Irvine, 3 Dall. (U. S.) 425, 1 L. Ed. 665, holds a contrary view. If so, the later, oft-repeated, and positive decisions of that court would control here; but a careful reading of the opinions in that case will show an express recognition of the settled rule. The Chief Justice, in his opinion, said:

"A confirmation of this equitable title, as effectual as that of any patent could have been, was afterwards comprised in the compact between Virginia and Pennsylvania, and in the ratification of the same by the legislative act of the latter," thus showing ample legal title to the property in the plaintiff.

Both in principle and on authority I think it altogether clear that plaintiff, as the holder of the certificate of purchase received by Peck from the state, whatever his rights thereunder, if any, may be, has no such legal title to or rights in the property in controversy as will enable him to maintain this action against defendant in possession under his contract of purchase from the state.

The decision of this question leaves unnecessary of determination the many other interesting ones involved in this action, such as the right of the plaintiff to maintain his action on a contract the conditions of which admittedly have been broken by him or his assignors; whether he or his assignors could stand by, knowing the state had attempted a forfeiture of the contract rights under the first sale made, allow defendant to purchase at a subsequent one, go into possession, remain there for a long period of time, and make valuable and lasting improvements, without protest, and then successfully maintain this action; or whether the attempted forfeiture by the state, under the facts of this case, is wholly void and of no force or effect.

On the whole case as presented, and on the undisputed facts, I have no doubt whatever that judgment must and should go for the defendant in this case and the other cases submitted.

It is so ordered.