## MEAD v. CHESBROUGH BLDG. CO.

(Circuit Court of Appeals, Second Circuit. January 31, 1907.)

No. 130.

1. WRIT OF ERROR—REVIEW—EFFECT OF REQUEST BY BOTH PARTIES FOR DIRECTION OF VERDICT.

Where both parties to an action at law request the direction of a verdict, the finding of the court in favor of one party is conclusive as to the facts, unless unsupported by any evidence.

[Ed. Note.—For cases in point, see Cent. Dig, vol. 3, Appeal and Error, § 4024.]

2. COURTS—UNITED STATES COURTS—PROCEDURE.

In an action of ejectment in a federal court, the legal title alone is involved, and it is immaterial whether the one party or the other has the best equitable title.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 913; vol. 17, Ejectment, §§ 17, 56.]

3. EJECTMENT—FRAUD—COGNIZANCE AT LAW.

Conveyances which were fraudulent in fact are void ab initio, and their invalidity may be determined in an action of ejectment, but a conveyance cannot be avoided in such action on the ground of a breach of trust or other ground which would render it fraudulent only in equity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Ejectment, §§ 56, 107, 109.]

4. TRUSTS—TITLE ACQUIRED BY TRUSTEE.

A purchase by a trustee of trust property for his own benefit is not absolutely void, but the purchaser acquires the legal title, and, while it may be voidable in equity, it cannot be attacked in an action of ejectment.

[Ed. Note.—For cases in point, see Cent Dig. vol. 47, Trusts, § 258.]

5. VENDOR AND PURCHASER—RIGHTS OF PURCHASER—PURCHASER FROM BONA FIDE PURCHASER.

A purchaser of real estate for value, although with notice of facts affecting the validity of the title, is protected by his grantors' want of notice.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser. § 580.]

6. TRUSTS—FORECLOSURE SALE—EVIDENCE TO IMPEACH FOR FRAUD.

A testator, leaving a son and daughter, devised one moiety of his real estate to the son in trust for the daughter during her life, with remainder to her heirs, and the other moiety to the daugher's husband in trust for the son during his life, with remainder to his heirs, with power to each trustee to mortgage any of the property so far as necessary to provide means to pay off any existing mortgage. Both son and daughter had children who were infants. Certain of the property, consisting of lots in New York City, was mortgaged at the time of the testator's death, and the mortgages were shortly afterward foreclosed, and the property purchased by or for one or the other of the life tenants for sums aggregating somewhat less than the amount of the mortgages. The infant remaindermen were made parties to the suits and were represented by guardians ad litem. The sales were regularly made at auction by an officer of the court, and the property sold to the highest bidder. The several lots were at once mortgaged by the purchasers to secure their personal bonds for as much as, or more than, the prior mortgages thereon, and one lot was sold three years later for double the price for which it was bought at the sale. In an action of ejectment brought by one of the remaindermen against a subsequent purchaser 40 years after such sales, and after the death of the trustees, there was no evidence to show the actual value of the lots at the time of the sales, or whether there was any other property of the estate, or whether the trustees could have borrowed the money to pay the mortgages, or of any fraud or conspiracy between them except by inference from such facts. Held, that in view of the presumption of good faith to which they were entitled, and of the rule that fraud will not be presumed, but must be clearly proven, a finding by the trial court in favor of the defendant, on motions by both parties for direction of a verdict, would not be disturbed by an appellate court.

In error to the Circuit Court of the United States for the Southern District of New York.

Writ of error by the plaintiff in the court below to review a judgment for the defendant entered upon a verdict by the direction of the court.

Jas. J. Allen and Charles A. Decker, for plaintiff in error.

David B. Ogden, Philip S. Dean, and Walter F. Peacock, for defendant in error.

Argued before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge. This is an action of ejectment to recover possession of certain real estate situate in the city and county of New York, and known as Nos. 30 and 32 Moore street. Both parties claim title under States M. Mead, who died January 19, 1863; the plaintiff as devisee in remainder under his will of an undivided one-eighth part, and the defendant through mesne conveyances originating in the foreclosure of mortgages executed by States M. Mead.

The primary question in the case is whether the titles acquired under the foreclosures were void for fraud; and it is conceded by the plaintiff in error that, unless they were, he is not entitled to recover.

While the validity of the titles to the two lots depends upon a different state of facts with regard to each, certain facts are applicable to both, and are these: States M. Mead by his will devised one undivided moiety of all his real estate to his son-in-law, Amos M. Sackett, in trust for the benefit and during the life of his son, Alexander H. Mead, with remainder to such persons as should be his heirs at law at the termination of the trust. The other undivided moiety of all his real estate he devised to his son, Alexander H. Mead, in trust for the benefit and during the life of his daughter, Mrs. Sackett, wife of said Amos M. Sackett, with remainder to such persons as should be her heirs at law at the termination of the trust. With respect to each of these trusts, the will conferred upon the trustee power to mortgage any part of the property "so far as might be necessary to do so in order to provide the means of paying off any incumbrance existing thereon."

At the date of the death of the testator, the premises in controversy were incumbered by mortgages which had been executed by him, one on No. 30, one on part of No. 32, and two on premises No. 4 and No. 5 South street, the rear part of which comprised the remaining part of No. 32. Shortly after his death all of these mortgages were foreclosed in actions brought by their respective owners. Through the sales and conveyances made pursuant to the decrees in these actions, the title to No. 30 was acquired by Alexander H. Mead, one of the trustees, the title to No. 32, by his wife, and the titles to Nos. 4 and 5 South street were acquired by Mrs. Sackett, the wife of the other trustee. At the time of these foreclosures, five of the children of Mr. Mead were infants under the age of 14 years, and four of the children of Mrs. Sackett were also infants under the age of 14 years. These infants, as well as the other remaindermen, and all other persons having any right or interest in the mortgaged premises, were parties to the foreclosure suits, and the infants appeared by guardians ad litem and submitted their rights to the protection of the court. One of these remaindermen was the present plaintiff; he being then about eight years of age.

The plaintiff became of age about 1876. The life estate of Sackett as trustee for the plaintiff's father terminated by the death of the lat-

ter in 1902. The present action was commenced in August, 1903. Before the commencement of the action, his mother had also died, and so had Sackett. About 40 years had elapsed since his father and mother had entered into possession of the premises in controversy under the titles acquired at the foreclosures.

The defendant was a purchaser from its immediate vendor for full value, and without any notice of facts affecting the validity of its title, other than those which would have been disclosed by an examination of the title in the offices of the register of deeds and of the clerk of the county of New York.

The facts particularly relating to the title of No. 30 Moore street are these: At the death of States M. Mead, there existed upon the premises a mortgage for $10,000, executed by him in 1853, and which was wholly unpaid. In June, 1863, the owner of that mortgage brought an action of foreclosure, which regularly proceeded to a decree and a sale of the mortgaged premises at public auction by a referee appointed by the decree, and at the sale the premises were struck off to Alexander H. Mead for the sum of $12,000; that being the highest sum bidden for the sale. Thereupon, and on August 18, 1863, the referee appointed by the decree to conduct the sale conveyed the premises by deed to the purchaser at the sale. Upon the same day Alexander H. Mead and his wife executed a bond secured by a mortgage on the premises to one Schermerhorn, conditioned for the payment of $10,000. In June, 1866, these premises were conveyed by Alexander H. Mead and his wife to States M. Mead by deed reciting $20,000 as the consideration thereof. Subsequently the premises were conveyed by States M. Mead and his wife to the wife of Alexander H. Mead.

The facts particularly relating to the title of No. 32 Moore street are these: At the time of the death of the testator, there was an existing mortgage on the front portion of No. 32 on which $3,000 was due and unpaid, another of $12,000 on No. 4 South street, and another of $15,000 on No. 5 South street. One Borland, the owner of the $15,000 mortgage on No. 5, commenced an action in July, 1863, to foreclose, which proceeded to a decree and to a sale thereunder by the sheriff at public auction. The sale took place September 15, 1863, and the property was bid in by Borland for $12,000; he being the highest bidder. Borland on that day assigned his purchase to Mrs. Sackett, and on that day she received the sheriff's deed for the premises. On the same day she and her husband executed to Borland a bond secured by mortgage on the front 80 feet of No. 5, conditioned for the payment of $16,000. In April, 1864, one Schermerhorn, who was then the owner of the mortgages for $3,000 on the front portion of No. 32, and for $12,000 on No. 4, commenced actions to foreclose the same, respectively. The actions proceeded to a decree in each, and to a sale thereunder, made by a referee appointed by the decree. The sale took place September 3, 1864. No. 32 was bid in by Mrs. Mead, wife of Alexander H. Mead, for $3,000, that being the highest bid upon the sale, and November 3, 1864, she received the referee's deed for the premises. No. 4 was bid in by Mrs. Sackett, wife of Amos M. Sackett, for the sum of $12,000, that being the highest bid upon the

sale, and November 3, 1864, she received a deed of the premises from the referee. On the same date Mrs. Sackett and her husband executed their bond, conditioned for the payment of $15,000, secured by a mortgage to Schermerhorn on the front 80 feet of No. 4. After Mrs. Sackett had thus become the owner of Nos. 4 and 5, the front 80 feet being subject to the mortgages to Schermerhorn and Borland, and on March 14, 1865, she and her husband conveyed by a quitclaim deed for a nominal consideration the rear 20 feet of b_th lots to Mrs. Mead. This conveyance operated to extend the original depth of No. 32 about 40 feet. The premises thus comprised were conveyed by quitclaim deed by Mrs. Mead to her husband in 1894.

No evidence was introduced upon the trial by either party concerning the value of the mortgaged premises at the time of the foreclosure sales, or showing whether or not there was any fund or property belonging to the trust estate other than the aforementioned real estate; but each party relied upon the documentary evidence, consisting of the mortgages, the will, the foreclosure records, and the deeds, to establish the facts which have been stated. All of these documents were matters of record in the office of the clerk or of the register of deeds of the county of New York at the time when the several mesne conveyances were executed under which the title of the defendant is derived. Upon these facts, and none other which is of any importance, each party requested the trial judge to direct a verdict in its favor. This was necessarily a request that the court find the facts, and the parties are therefore concluded by the finding made by the court in favor of the defendant, unless there was no evidence whatever to support the finding. Runkle v. Burnham, 153 U. S. 216, 14 Sup. Ct. 837, 38 L. Ed. 694; Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654.

In actions of ejectment, as the controversy concerns merely the legal title of the parties, the rules of courts of equity do not obtain, and it matters not whether the one or the other has the best equitable title. This is the law of the federal courts, even when they are sitting in states in which equitable titles are triable in ejectment. Fenn v. Holme, 21 How. 481, 16 L. Ed. 198; Johnson v. Christian, 128 U. S. 374, 9 Sup. Ct. 87, 32 L. Ed. 412; Miller v. Courtnay, 152 U. S. 172, 14 Sup. Ct. 517, 38 L. Ed. 401; Carter v. Ruddy, 166 U. S. 493, 17 Sup. Ct. 640, 41 L. Ed. 1090. Consequently the plaintiff was not entitled to recover upon any theory that the conveyances pursuant to the foreclosures were invalid, merely because they were obtained through a breach of the fiduciary duties of the trustees, or merely because they may have been fraudulent in the view of a court of equity. If the conveyances were actually fraudulent—that is, if they were procured or suffered by the trustees with the purpose of enabling themselves to profit at the expense of those, or some of those, towards whom they occupied a fiduciary relation—they were void ab initio, and the validity of such conveyances may be determined in ejectment. Swayze v. Burke, 12 Pet. 11, 9 L. Ed. 980; Jackson v. Burgott, 10 Johns. 457, 6 Am. Dec. 349.

It is insisted for the plaintiff in error that the facts establish a conspiracy between the two trustees to cut off the interest of the remain-

dermen in the mortgaged premises, and acquire the property for themselves, or their wives, at an inadequate consideration. If this is true, and if the facts do not admit of any contrary inference, the court below erred, and should have directed a verdict for the plaintiff.

At the time of the foreclosures, each of the trustees was seised during the life of his cestui que trust of a moiety of the mortgaged premises; Mead being trustee for Sackett's wife, and Sackett being trustee for Mead. As tenants in common, each of them stood in the relation of life tenant to the remaindermen, who among themselves were tenants in common of the reversion. The relations arising out of a community of interests in the property o'iligated the the trustees to take no unfair advantage of the remaindermen. The power conferred upon them by the will to mortgage any part of the property to pay off any incumbrance thereon was intended to prevent the destruction of the devised estates by the enforcement of such an incumbrance. If they procured or suffered the mortgages to be foreclosed, when by exercising this power they could have saved from destruction the interests of the remaindermen, they were guilty of a breach of their fiduciary duties. As the foreclosures resulted in divesting the title of the remaindermen and transferring it to themselves or their wives, if this result was brought about by the trustees for the purpose of making a profit at the expense of the remaindermen, this conduct was fraudulent, and the titles they acquired were void. The crucial questions are whether the trustees ought to have prevented these sales, and whether they allowed the property to be sold for an inadequate consideration. If the facts require a finding against the trustees upon these questions, they raise a presumption of fraudulent intent.

As it does not appear that the trustees were instrumental in procuring either of the foreclosures, or that there were any funds belonging to the trust estates in their hands or that there was any other real property devised to them except the mortgaged property, it must be assumed that they could have satisfied these mortgages only by securing a loan by mortgage upon the incumbered premises. If these premises were not available for that purpose, because they were not of the requisite value, there is no foundation for the charge of misconduct against the trustees.

At the foreclosure sales, No. 30 (mortgaged for $10,000) brought $12,000; No. 32 (mortgaged for $3,000) brought $3,000; No. 4 (mortgaged for $12,000) brought $12,000; and No. 5 (mortgaged for $15,000) brought $12,000. Thus, while No. 30 brought more than the amount of the mortgage, the sum realized upon all the sales was less than the amount of the mortgages upon the premises. It appears, however, that, immediately after the sales, No. 5, which had brought $12,000, was mortgaged again for $16,000; that No. 4, which had brought $12,000, was mortgaged again for $15,000; and that the new mortgages on Nos. 4 and 5 covered premises about one-fifth less in depth that those originally mortgaged. These facts indicate that these two lots were worth more than they brought at the sales, and would be very persuasive, and perhaps controlling, if the mortgages had been the only security taken by the mortgagees. In each case, however, the mortgages were secured by the personal ob-

ligations of the mortgagor and his wife. While it may be improbable, it is nevertheless a legitimate inference, that it was the value of these obligations which influenced the mortgagee to accept the security offered. It also appears that, some three years after the foreclosure sale, No. 30 was conveyed by a deed reciting a consideration of double the amount brought by the sale. Whether there had been an appreciation in the market value of real estate in the locality in the meantime, or whether new buildings or improvements on the premises had contributed to increase their value, does not appear; and, while there is a presumption that the same state of facts continued to exist, in the absence of evidence to the contrary, such presumption is not of a very cogent nature, in view of the rapid changes that are so frequent in real estate values in New York City.

Opposed to these presumptions are those that the sales were fairly conducted, and that the mortgaged premises were sold for a fair price. The sales were conducted by officers of the court appointed by the decrees. They were made at public auction, after public notice had been given pursuant to the rules of the court, and the premises were sold to the highest bidder. It is to be presumed that property sold at judicial sale realized an adequate price, and some of the authorities hold that this presumption is almost conclusive. Karn v. Rorer Iron Co., 86 Va. 754, 11 S. E. 431; Mount v. Manhattan Co., 43 N. J. Eq. 25, 9 Atl. 114.

We are of the opinion that a jury would have been justified in finding that the mortgaged premises were not of sufficient value to have enabled the trustees to replace the existing mortgages with new mortgages for the same amount, notwithstanding the presumptions to the contrary arising from all the surrounding facts.

Upon the general question of fraudulent conduct by the trustees, they were entitled to the benefit of the presumption of good faith, and of the rule of law that fraud must be clearly proven. The presumption of fraud arising from the abuse of confidential relations is a rule of courts of equity. In courts of law the relations of the parties are only important as showing opportunity and motive by one of them to deceive and take advantage of the other; and fraud is never presumed, but must be proved by the party who alleges it. In this case there may have been, and probably was, a motive for the trustees to procure a judicial sale of the property, and incidentally to extinguish the rights of the remaindermen. The property was tied up during the lives of the cestuis que trust. It could not be mortgaged to improve it, if new buildings or extensive improvements were or should be required. It might be that some of the remaindermen would be infants at the termination of the life estates. In the interval it might be highly advantageous to all interested to dispose of the property. This motive does not necessarily impeach the good faith of the trustees. These infants were the children of the trustees. To suppose that the trustees contemplated defrauding them would be a harsh and violent supposition.

As to No. 30, defendant was clearly entitled to prevail, even if the facts had required a finding that the foreclosure sales and the deeds executed pursuant thereto were fraudulent. As to these premises, the defendant acquired the title of States M. Mead, which the latter

derived in 1866 by his deed from Alexander H. Mead and wife. The recital in this deed shows that he was a purchaser for a valuable consideration. So far as appears he was without notice of any facts affecting the title to these premises, except the matters of record which would have been disclosed by an examination of the title thereto. As it was unnecessary for him to investigate the title to No. 32, or to Nos. 4 and 5, he was not charged with constructive notice of the facts which it is claimed disclosed a fraudulent conspiracy. His title was valid, unless the deed to Alexander H. Mead, his predecessor in title, was void. That deed was not void, notwithstanding it was derived by a purchase at the foreclosure sale of a part of his own trust estate, and was made directly to him. It has long been the law of New York, as declared by the decisions of its courts, that the deed to a trustee upon his purchase of the trust estate is not a nullity. Such a deed is ordinarily void when assailed by a beneficiary in a court of equity. As early as Jackson v. Walsh, 14 Johns. 407, the court said:

"No case is to be found where a court of law has pronounced such a deed absolutely void. The legal title undoubtedly passes, and the rules and principles which govern the court of chancery in such cases show that it would have been unfit for a court of law to interfere and set aside such conveyances."

In the comparatively recent case of Boyer v. East, 161 N. Y. 580, 56 N. E. 114, 76 Am. St. Rep. 290, the court held that the purchase of infants' real estate by their guardian in socage at a foreclosure sale was so far valid as to convey a good legal title. There are no decisions to the contrary in the courts of New York, although there are decisions that a corrupt purchase is void. In New York, as elsewhere, in equity the purchase is presumptively fraudulent, and consequently void; but the presumption may be overthrown by the trustee. The general rule, according to the decisions of the federal courts, is stated in Hammond v. Hopkins, 143 U. S. 224, 12 Sup. Ct. 418, 36 L. Ed. 134, as follows:

"A purchase by a trustee of trust property, for his own benefit, is not absolutely void, but voidable, and it may be confirmed by the parties interested, either directly or by long acquiescence, or by the absence of an election to avoid the conveyance within a reasonable time after the facts come to the knowledge of the cestui que trust."

In Hoyt v. Latham, 143 U. S. 553, 12 Sup. Ct. 568, 36 L. Ed. 259, this rule was reiterated, and it has been stated in various other decisions of the Supreme Court, to which reference is unnecessary.

It is conceded that a purchaser for a valuable consideration, without notice, has a good title, though he has purchased of one who had obtained the conveyance by fraud. The rule is the same as that which obtains in favor of the bona fide purchaser of personal property which the vendor has acquired by fraud.

The defendant was protected, as to No. 30, by the title acquired through the conveyance of States M. Mead, notwithstanding it, or its mesne grantors, may have had notice of the facts affecting the title to No. 32 at the time of their conveyance. It acquired as good a title as he could convey. A purchaser with notice is protected by his vendor's want of notice. Mills v. Smith, 8 Wall. 27, 19 L. Ed

346; Commissioners v. Clark, 94 U. S. 278, 24 L. Ed. 59; Cromwell v. County of Sac, 96 U. S. 51, 24 L. Ed. 681.

As regards No. 32, there was a fair question for a jury upon the issue of fraud, and, as the defendant was doubtless chargeable with constructive notice of all the matters of record affecting the title to any part of the premises, there was a question for the jury upon the whole case. But, as we have indicated, the case was not one in which there was no evidence to support the finding of the trial judge.

The judgment is affirmed.