## LEMON v. MARTIN.

(Court of Appeals of District of Columbia.
Submitted October 10, 1924. De-
cided January 5, 1925.)

No. 4073.

1. **Witnesses ⊜⟶178(3)—Cross-examination of defendant, called as witness of plaintiff administrator as to circumstances and conversations with intestate at.time of transaction, held proper.**

In administrator's action for amount of intestate's loan to defendant, in which defendant, called as administrator's witness, testified that she had received certain sum from intestate, and that intestate did not owe her money, cross-examination as to circumstances under which she received such sum, and as to conversations had by her with intestate concerning the matter, held proper.

2. **Appeal and error ⊜⟶1048(6)—Error in admission of testimony on cross-examination cured by cross-examining party's acceptance of witness as own witness.**

Any error in admission of testimony on cross-examination of defendant called as plaintiff's witness, because directed to material matters not brought out on direct examination, was cured by action of defendant's counsel in accepting her as his own witness.

3. **Trial ⊜⟶59(2)—Order of introducing witnesses discretionary with court.**

Order in which witnesses shall be introduced is entirely within the reasonable. discretion of the court, and in exercise of that discretion a witness may be allowed to testify in behalf of one party during presentation of case of adverse party.

4. **Witnesses ⊜⟶178(1)—Defendant's testimony as to transaction with intestate not incompetent, where she was called as witness by administrator.**

In administrator's action for amount of intestate's loan to defendant, defendant, having been called by administrator to testify that she received the money, could testify for herself as to transaction, or as to declarations by intestate, under Code, § 1064.

5. **Trial ⊜⟶177—Both parties, by moving for directed verdict without request for further instructions, submitted facts of case to trial judge for decision.**

Where both parties moved for a directed verdict without asking for further instructions, they submitted to the trial judge for decision, not only the law, but the facts of the case, and proper inferences to be drawn therefrom.

6. **Appeal and error ⊜⟶997(3)—Both parties, having moved for directed verdict, were concluded by court's finding as to facts, if supported by substantial evidence.**

Where both parties moved for directed verdict, without asking for further instructions, they were concluded by court's finding as to the facts, if there was any substantial evidence to support it.

7. **Appeal and error ⊜⟶882(14)—Plaintiff, having insisted that court should pass on issues involved as matter of law, could not complain on appeal of court's failure, to submit facts to jury.**

Plaintiff, having insisted that court should pass on issues involved as matter of law, after it had denied motions by both parties for a directed verdict, and had announced its willingness to submit facts to jury, could not complain on appeal that court decided issues as a matter of law, without submission of facts to jury.

8. **Appeal and error ⊜⟶1061(4)—Absence of verdict harmless, where both parties moved for directed verdict.**

Where both parties moved for a directed verdict, the fact that there was no verdict returned by jury was not prejudicial, since in such case the court was the judge of both the law and the facts, and the return of a verdict was a useless formality.

9. **Executors and administrators ⊜⟶221(6)—Evidence held to sustain finding that money had been received as gift, and not as loan.**

Evidence held to sustain finding that defendant had received amount sued for from plaintiff's intestate as a gift, and not as a loan.

Appeal from Supreme Court of District of Columbia.

Action by Frank M. Lemon, administrator of the estate of Erasmus F. Peters, deceased, against Ella T. Martin. Judgment for defendant, and plaintiff appeals. Affirmed.

W. J. Dow and H. S. Barger, both of Washington, D. C., for appellant.

J. S. Barbour and C. B. Garnett, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. This is an appeal from a judgment of the Supreme Court of the District of Columbia in favor of the defendant in an action brought by the plaintiff to recover $4,000, claimed to have been loaned to the defendant by appellant's decedent.

The plaintiff's verified declaration was filed on the 28th of July, 1921, and contained two counts. The first count alleged that the defendant was indebted to Erasmus F. Peters in the sum of $4,000 for moneys had and received for his use by the defendant. The second count declared that the defendant was indebted to Peters in the sum of $4,000 for money loaned by Peters to the defendant on the 11th of June, 1920, and that neither the whole nor any part of the

money so loaned had been repaid. Both counts contained an allegation that Peters died on the 10th of February, 1921, and that Frank M. Lemon was at the time the declaration was filed the duly appointed administrator of the estate of the deceased.

The plea of the defendant to the declaration was filed on August 17, 1921, and averred that the defendant did not undertake and promise in the manner and form alleged in the declaration. Defendant's affidavit of merit set up that Peters was her neighbor and friend, for whom she had performed many acts of kindness, and that he of his own free will and accord, and without request on her part, did, on the 11th of June, 1920, make a gift to her of the sum of $4,000 to purchase the home in which she resided, and from which she was about to be evicted. After issue joined the case was brought to trial before the court and a jury duly impaneled.

The plaintiff in support of his declaration called the defendant Ella T. Martin and propounded to her the following questions, to which she made the following answers:

"Q. On or about June 11, 1922 (1920?) did you receive from Mr. Peters the sum of $4,000? A. Mr. Peters gave me—

"Q. Just answer the question 'yes' or 'no.' A. Yes, sir.

"Q. Did Mr. Peters on that day owe you any money? A. Owe me any money?

"Q. Yes; did he owe you any money? A. No, sir."

The witness then stated that she used the $4,000, and $1,000 more previously acquired by her, for the purchase of the house in which she lived. On cross-examination the witness was asked to state the circumstances under which the $4,000 was received. To that question counsel for plaintiff objected upon the ground that the question was not proper cross-examination. In response to a question by the court, defendant's counsel stated that he did not care whether the witness was regarded as a witness for the defendant or not, whereupon the court overruled the objection and the plaintiff excepted. The witness then testified that hearing that the house in which she had lived for about 10 years was about to be sold over her head, she asked her landlord, a Mr. Latimer, whether she would be permitted to purchase the place, and, if so, at what price and upon what terms; that Mr. Latimer told her that he thought that the owner would sell the house for $4,500, and that he (Latimer) would aid her in securing a loan to meet the required cash payment on the purchase

price; that Peters was informed of the negotiations with Latimer and said to her, "Mrs. Martin, I think you are a deserving woman and I would just as soon help you as anybody I know; * * * go back and see if you can get the house any cheaper by paying cash, and I will give you the balance of the money you have not got;" that she did not think it proper to take money from Mr. Peters, and consulted a friend, who informed her that she might accept financial aid from Mr. Peters without impropriety; that she then resumed negotiations with the landlord, who insisted on a price of $5,000; that Peters said to her, "Now, Mrs. Martin, any day you are ready I will have that money right here for you; I am a man of my word; I will be as good as my word; don't you hesitate;" that she thereupon closed the deal for the house, and Peters handed to her $4,000, saying, "Now, Mrs. Martin, here is the money to pay for your home;" that she never asked Mr. Peters to lend her any money; and that if she was going to borrow the money from Mr. Peters she would have gone to him first, instead of relying on the landlord's promise to secure a loan. To the testimony brought out on cross-examination, as to the circumstances under which she secured from Peters the $4,000, the plaintiff objected, and, his objection being overruled, he took an exception. On redirect examination the witness testified that Mr. Peters told her not to give the lessor a deed of trust on the house; that he (Peters) was worth $200,000, and that he would just as soon help the defendant out as anybody he knew; that he would give her $4,000 to make up the balance of the purchase price.

Mrs. Ella Allen, a witness for the plaintiff, testified that she was well acquainted with Peters, who had boarded with her for 10 years; that when she got ready to buy her own home Peters bought the house, and agreed to pay to her for his room and board therein the sum of $50 per month. During the direct examination of the witness, the plaintiff propounded to her the following question:

"Q. * * * Did Mr. Peters say anything to you within four or five days of this transaction of June, 1920 (1921?), as to whether or not he was going to let Mrs. Martin have some money?"

To this question the defendant objected, and, the objection having been overruled, he took an exception. The witness thereupon answered as follows:

"A. He came over to see me before he

lent the money, and asked my advice on it. He met me at Mrs. Grubb's, and I said, 'Now, Mr. Peters, that is not my business; that is yours individually, and I have nothing to do with it; I can't give you any advice whatsoever about lending this money; you do it to suit yourselves;' and he had asked me about taking this 235 and letting him board with me. I says, 'If you are going to let Mrs. Martin have the money, why don't you take a room with her and board with her?' He says, 'No; I would not board with Mrs. Martin; for one thing, she has got too rough a crowd with her.' That is just what he said.

Mrs. Allen also testified that Peters told her that he would not draw any interest on the principal of $4,000 until January 1st, and that Mrs. Martin had agreed to pay him $50 a month and as much more as she found herself able to pay. On cross-examination Mrs. Allen stated that Peters had loaned money to her son and his wife, and took no note therefor until "towards the last"; that Mr. Peters loaned $2,500 to Mrs. Smith, a daughter of the witness, and that her daughter had to worry him nearly to death before she could get him to fix up a deed of trust; that he did not present the deed of trust to her daughter until two or three weeks before he died.

Mrs. Louise R. Grubb testified, for the plaintiff, that Peters told her that Mrs. Martin had asked him to loan her $4,000, and that he subsequently informed the witness that he had loaned that sum to Mrs. Martin; that Mr. Peters loaned money to the witness and her husband, and that later Peters brought to them a note for the loan; that before her marriage she sometimes borrowed money from Peters; and that Peters in a couple of weeks would present a note, which she would sign.

Mrs. Robert L. Smith corroborated the testimony given by her mother as to statements made by Peters and as to loans made by Peters to the witness and her husband.

On behalf of the defendant, Mrs. Jessie McDaniel testified that she saw Mr. Peters very frequently in Mrs. Martin's house after working hours; that Mr. Peters was a good friend of Mrs. Martin, and was very fond of her children; that Mrs. Martin was very kind to Mr. Peters, and prepared his meals for him when he was sick; that Mr. Peters, on the 10th or 11th of June, came into the kitchen of Mrs. Martin's home and handed her a roll of money, saying, "This is yours;" that after Mr. Peters left the house the witness counted the money in the roll,

and found that it contained four green bills for $1,000 each; that Peters told the witness that Mrs. Martin could have hot water heat in the house, and that it would not cost her a cent, if she would only say the word; that the reputation of Mrs. Martin for honesty and integrity was of the very highest.

William Hussey testified, for the defendant, that he had been acquainted with Erasmus Peters for 17 years; that during the hot weather of 1920 Peters told the witness that he (Peters) was going to give Mrs. Martin $4,000 to protect her and to buy a house for her, because she had worked hard to raise her two children; that Peters was a nice sort of a man, but peculiar in his ways.

James Alfred Hunt testified, on behalf of the defendant, that he was a police officer and was well acquainted with Peters, whom he had known ever since 1917; that in October, 1920, Peters told the witness that Mrs. Martin had been threatened with the loss of her home, because it had been offered for sale by the landlord, but that with some money Mrs. Martin had and some that he (Peters) gave her she purchased the place.

Pursuant to stipulation, excerpts from certain testimony given by Peters before a Senate investigating committee were read. The excerpts disclosed that Peters had testified that he had inherited property to the value of about $125,000, and that he was then worth about $150,000.

No further evidence was offered in the case by either side, except some testimony by Mrs. Allen on behalf of the plaintiff tending to impeach the testimony of defendant's witness Hussey. Both plaintiff and defendant thereupon moved the court to direct a verdict. The court denied both motions and allowed an exception to both parties. Counsel for the plaintiff then called to the attention of the court a decision of the Supreme Court of the United States, and insisted that, plaintiff and defendant having moved for a directed verdict, it was the duty of the court under that decision to pass upon the question as a matter of law. The court yielded to that contention, and, after deciding the issues involved in favor of the defendant, adjudged that the plaintiff take nothing by his action, and that the defendant recover her costs.

On that evidence and the exceptions taken the appellant contends, first, that the court erred in denying plaintiff's motion to strike out the testimony given on cross-examination by the defendant as to the circumstances surrounding the receipt by her from

Peters of $4,000, and in admitting on such cross-examination conversations had by defendant with Peters concerning the money; second, that the case should have been submitted to the jury on the court's decision as to the law and facts, and that it was reversible error to substitute the court's finding for the verdict of the jury; and, third, that the court erred in finding for the defendant, and that the finding and judgment of the court was against the evidence, and not supported by the evidence.

[1-3] We are of the opinion that none of the contentions made by the plaintiff can be sustained. The plaintiff saw fit to call on the defendant to testify as his witness, and, having elicited from her the statement that she had received from Peters the sum of $4,000, and that Peters did not owe her any money, it was entirely proper to cross-examine her, not only as to the circumstances under which she received the $4,000 from Peters, but as to conversations had by her with him concerning the transfer of the money. Even if the cross-examination had been directed to material matters not brought out on direct examination, defendant's counsel having announced to the court that he was willing to consider the witness on cross-examination as a witness for the defendant, that acceptance of the witness cured any error committed in permitting the cross-examination to go out of bounds. The order in which witnesses shall be introduced is entirely within the reasonable discretion of the court, and in the exercise of that discretion a witness may be allowed to testify in behalf of one of the parties during the presentation of the case of the adverse party. As defendant's counsel was willing to make Mrs. Martin's cross-examination a part of his direct case, her testimony on cross-examination was not vouched for by the plaintiff, and the plaintiff was therefore not prejudiced by the fact that she was called upon to testify out of turn as defendant's witness.

[4] Section 1064 of the District of Columbia Code provides as follows:

"Sec. 1064. If one of the original parties to a transaction or contract has, since the date thereof, died, * * * the other party thereto shall not be allowed to testify as to any transaction with or declaration or admission of the said deceased * * * in any action between said other party * * * and the executors, administrators, * * * or other persons legally representing the deceased, * * * unless he be first called upon to testify in relation to said transaction or declaration or admission by the other party. * * *"

Under that section in an action on a contract the surviving party to a transaction is disqualified from testifying against a decedent party thereto, unless the representatives of the decedent call upon the surviving party to testify in relation to the transaction or to declarations or admissions made by the decedent in his life time. Here the attorney for the plaintiff elected to call on the defendant to testify, and she was therefore not barred from giving her testimony as to the transaction, or as to declarations or admissions made by Peters.

[5, 6] On the whole evidence submitted both parties moved for a directed verdict, without asking for further instructions, and thereby submitted to the trial judge for decision, not only the law, but the facts, of the case, and the proper inferences to be drawn therefrom. By their motion both parties asserted that there was no disputed question of fact, and both were certainly bound and concluded by the finding of the court, if there was any substantial evidence to support it. Mead v. Chesbrough Bldg. Co., 151 F. 998, 1000, 81 C. C. A. 184; Anderson v. Messenger, 158 F. 250, 253, 85 C. C. A. 468; American National Bank v. Miller, 185 F. 338, 341, 107 C. C. A. 456; Buetell v. Magone, 157 U. S. 154, 157, 15 S. Ct. 566, 39 L. Ed. 654; Sena v. American Turquoise Co., 220 U. S. 497, 501, 31 S. Ct. 488, 55 L. Ed. 559; Williams v. Vreeland, 250 U. S. 295, 298, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038.

[7] Moreover, after the court had announced that it would deny both motions for a directed verdict, and therefore its willingness to submit the facts to the jury, counsel for the plaintiff insisted that the court should pass upon the issues involved as a matter of law. The court did so, and the appellant cannot now be heard to complain of that which the court did in compliance with his own request.

[8] As the action of the parties themselves made the court the judge of both the law and the facts, the return of a verdict by a jury was a useless formality, and the fact that no verdict was returned prejudiced neither of the parties.

[9] There was substantial evidence to support the decision of the court, and the judgment must therefore be affirmed, with costs.

Affirmed.