## AGGERS v. SHAFFER et al.

(Circuit Court of Appeals, Eighth Circuit. February 25, 1919.)

No. 4940.

1. COURTS ⊕⊃312(1)—JURISDICTION OF FEDERAL COURTS—SUIT BY ASSIGNEE—"CHOSE IN ACTION."

Under the law of Oklahoma an oil and gas lease of the ordinary kind gives the lessee a present vested interest in the premises, and a suit by his assignee to protect his rights thereunder is not one on a "chose in action," within Judicial Code, § 24 (Comp. St. § 991), in which he must show diversity of citizenship between his assignor and defendants to give a federal court jurisdiction.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Chose in Action.]

2. MINES AND MINERALS ⊕⊃79(6)—OIL LEASE—FORFEITURE.

An oil and gas lease requiring quarterly payments of rental until development work was begun, but not providing for forfeiture, nor making time of its essence, *held* not forfeited by a slight delay in making a payment through mistake.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit in equity by Charles B. Shaffer against W. A. Aggers and others. Decree for complainant, and defendant Aggers appeals. Affirmed.

For opinion below, see 241 Fed. 139.

Joseph C. Stone, of Muskogee, Okl. (Edward H. Chandler, Farrar L. McCain, John B. Meserve, and Ralph W. Garrett, all of Tulsa, Okl., Charles A. Moon, of Muskogee, Okl., and Francis Stewart, of Kansas City, Mo., on the brief), for appellant.

George S. Ramsey and Malcolm E. Rosser, both of Muskogee, Okl. (Edgar A. De Meules and Villard Martin, both of Tulsa, Okl., and J. Berry King, of Muskogee, Okl., on the brief), for appellee Shaffer.

John Devereux, of Tulsa, Okl. (F. B. Dillard and Bird McGuire, both of Tulsa, Okl., on the brief), for appellees other than Shaffer and Hyer.

Before HOOK and SMITH, Circuit Judges, and TRIEBER, District Judge.

PER CURIAM. This is a suit by Charles B. Shaffer, the assignee of an oil and gas lease of land in Creek county, Okl., against W. A. Aggers and others, to cancel subsequent leases, to enjoin the defendants from interfering with him in the enjoyment of his lease, and for other relief. Upon final hearing the plaintiff, Shaffer, was awarded a decree (241 Fed. 139), and the defendant Aggers, a subsequent lessee, appealed.

The lease was for the term of five years and as much longer as oil or gas was found in paying quantities. The lessee paid the lessors $120 as consideration at the execution of the lease and contracted to commence a well on the premises within 12 months or thereafter

⊕⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pay the lessors a rental of $120 per annum, quarterly in advance, until the well was commenced. If a well was driven and oil or gas found, the lessors were to receive substantial returns therefrom. The lessee had the right at any time to surrender the lease for cancellation upon paying the lessors $1, provided he exercised it before bringing any suit or action to enforce its terms.

[1] The appellant contends that the trial court did not have jurisdiction of the suit. The ground of jurisdiction was diversity of citizenship, and such diversity existed between the plaintiff, on the one side, and the defendants, including the appellant, on the other. But it is urged that plaintiff's suit was for the specific performance of an optional unilateral contract, was therefore to recover upon a chose in action, within the meaning of section 24, Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1091 [Comp. St. § 991]), and, since the citizenship of plaintiff's assignor was not disclosed, the jurisdiction of the court below did not appear. It is enough to say of this that by the law of Oklahoma, where the land is, a lease like that held by plaintiff grants a present vested interest in the premises (Northwestern Oil & Gas Co. v. Branine, 175 Pac. 533; Rich v. Doneghey, 177 Pac. 86), and that the right he sought to protect and enforce is not a chose in action within the meaning of section 24 of the Judicial Code. The citizenship of plaintiff's assignor was therefore immaterial. The authority of Brown v. Wilson, 160 Pac. 94, L. R. A. 1917B, 1184, relied on for a contrary conclusion, is destroyed by the later cases above cited. Upon the nature of such leases, see Guffey v. Smith, 237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856, held in the Rich Case, supra, to be substantially in accord with the rule in Oklahoma; also Kemmerer v. Midland Oil & Drilling Co., 144 C. C. A. 154, 229 Fed. 872.

[2] The remaining question is whether plaintiff's lease was forfeited by his failure to pay an installment of rent or delay money, as sometimes called, at the time it was due. There was such a failure, but it was clearly due to an accident or mistake induced by a confusion for which one of the lessors was primarily responsible. The lease provided that all payments should be made directly to the lessors or deposited to their credit in a designated bank in Oklahoma; also that the lessee should not be bound by any change in the ownership of the land, except upon notice with proof of the conveyance. The plaintiff, as assignee of the lease, adopted the course of making payments to the bank. After he had promptly made eight quarterly payments, covering a period of two years, he was informed that the lessors had sold the land in two parcels to separate grantees. One parcel was sold to W. J. Blaine and wife, and the proportion of annual rental attributable to it was $80, or $20 quarterly. This part of the leased premises only is in controversy in this suit.

One of the lessors, H. L. Marks, claimed to be the exclusive agent of the Blaines to receive their part of the rental payments. Marks also had a controversy with the Oklahoma bank, where the payments had been made, about matters for which the plaintiff was not responsible, and he desired a change to a bank in Kansas. As the time for the ninth quarterly payment was approaching there was considerable cor-

respondence between the plaintiff and Marks about the change in titles, the authority of the latter to represent the Blaines, the furnishing of proof of the conveyances, and the change of the depositary bank. The ninth payment was made in time to the Kansas bank for the credit of Marks as agent of the Blaines. Two weeks before the tenth payment became due plaintiff sent a draft for $20, the correct amount, to the Kansas bank, but made a mistake in his instructions regarding the credit. He directed that the amount be credited to Blaine, instead of to Marks, as agent of Blaine and wife. The bank did not know Blaine and held the draft without notifying the plaintiff. The mistake was discovered eight days after the payment was due. Plaintiff immediately tried to correct it, but Marks instructed the bank to decline to receive the payment on his account and refused payment himself. He orally asserted a forfeiture of the lease and afterwards gave plaintiff written notice to that effect. Thereafter the appellant, Aggers, with information of the circumstances, secured his lease, and other leases were given.

The lease under which plaintiff claims contains no forfeiture clause, nor provision making the time of rental payments of the essence of the contract. Plaintiff's interest in the premises was a substantial one; it was not based on a mere unilateral option, subject to the strictest construction, and forfeitable for the slightest deviation. The failure to pay at the precise time due was a pure accident or mistake. It was not intentional, nor in conscious disregard of the rights of the lessors or their grantees. The injury to the latter was not appreciable. Their position was technical and without substantial equity. Moreover, the change of the place of payment from Oklahoma to Kansas was at their instance and for their accommodation. The lease did not require plaintiff to assent to it, and had he continued making payments to the bank in Oklahoma its long familiarity with the transaction might well have resulted in a timely discovery of the mistake.

A point is made that plaintiff had no right to pay by draft. That was for the bank to determine, and it made no objection on that account. The lessors or their grantees were concerned with the credit on the bank's books, not as to how the funds were sent. Besides, the medium employed at the time in question was in accord with the prior custom.

The decree is affirmed.