### EWERT v. ROBINSON et al.

### ROBINSON et al. v. EWERT.

(Circuit Court of Appeals, Eighth Circuit. April 5, 1923. Rehearing Denied June 14, 1923.)

Nos. 5812, 5821.

1. **Mines and minerals** ⊗⟹77—**Lease not unilateral and not subject to forfeiture for slightest deviation.**

An oil and mining lease for the period of 10 years *held* to convey to the lessee a substantial interest in the premises, not based on a mere unilateral option, and not forfeitable for the slightest deviation on the part of the lessee.

2. **Courts** ⊗⟹342—**Ejectment based on equitable title not cognizable in federal courts, notwithstanding state statutes.**

An action in ejectment will not lie in the United States courts, if based on a mere equitable title, notwithstanding the state statutes may provide otherwise.

3. **Mines and minerals** ⊗⟹73—**Lease more than mere license.**

Though a lease for a term of years, granting to the lessee all the oil, gas, and mineral ores contained in the premises, with a right to remove the same, did not convey the oil or gas or mineral in the ground, *held*, that it was more than a mere license or incorporeal hereditament, and vested in the lessee a present interest in the premises.

---

⊗⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Mines and minerals ⬖➡56—Distinction between license and lease for term of years stated.**

A contract giving merely the right to take ore from a mine, no interest or estate being granted, confers a mere license, and the licensee acquires no right to the ore until he separates it from the freehold; but an instrument that demises and leases lands for mining purposes only, for a designated term of years, at a fixed rent, and gives the right to erect necessary buildings, is a lease, and not merely a mining license.

**5. Mines and minerals ⬖➡56—Lease for term of years held to convey present vested interest in lessee.**

A lease for a definite term of years, granting to the lessee oil, gas, and minerals, with the right to remove the same, and providing that, if operations were not begun within a 12-months period, the lessee should pay a fixed annual rental, and providing for forfeiture unless the lessor after 30 days' notice from the lessee, should remedy any default in the terms of the lease, *held* to vest in the lessee a present interest in the land, and not to be a mere option or license.

**6. Ejectment ⬖➡16—Actual entry or possession not essential to maintain action.**

Entry, actual or constructive, is no longer essential to the maintenance of an action in ejectment, the ancient requirement of the common law as to livery of seisin being a thing of the past, and the right of entry and the right of possession, not actual entry nor actual possession, being essential.

**7. Mines and minerals ⬖➡73—Provision in lease as to suspension of covenants in case conflicting leases found to exist held not condition precedent.**

Where an oil and mineral lease for a term of years provided that, if any valid mining leases should be found to exist, then the covenants to commence prospecting and mining operations should be suspended until the expiration of such other leases as might be found to exist, and until the lessor should place the lessee in undisputed possession, *held*, in an action of ejectment against the lessee and his assignees, that such provisions would not constitute a condition precedent to the taking effect of the lease, in the absence of a showing that any other leases were found to exist.

**8. Mines and minerals ⬖➡81—Lessee, having right of entry, entitled to maintain ejectment without actual entry.**

An oil, gas, and mineral lease, which provides for a fixed term of years and grants the right of occupancy to the exclusion of others for the purpose of taking the minerals, implies a present right of entry in the lessee and makes it unnecessary that he should, in order to maintain an action of ejectment, make actual entry on the premises, as would be required if he were a mere licensee.

**9. Mines and minerals ⬖➡77—Sublease in violation of provision requiring written authority or permission held to operate as forfeiture.**

Where the assignee of a lessee sublet without the written consent or permission of lessee, it operated as forfeiture of his rights, under an express provision that should be the effect of any such unauthorized sublease.

**10. Appeal and error ⬖➡1008(2)—Court findings, jury being waived, assailable only if unsupported by any substantial evidence.**

Where an action in ejectment was tried by the court, a jury having by agreement been waived, the finding of the court is similar to the verdict of the jury, and can be assailed only on the ground that there was no substantial evidence to support it.

**11. Trial ⬖➡392(2)—Request for findings and conclusions too late, when made after filing of court's findings and conclusions.**

Where an action was tried to the court, a jury by agreement being waived, and no requests for findings of fact and conclusions of law were made until after the filing of the court's findings and conclusions,

⬖➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a request thereafter made for such findings of fact and conclusions of law came too late.

**12. Ejectment ☞114—Court cannot grant equitable relief.**

A court by agreement trying an ejectment action without a jury is without authority to grant equitable relief, but is restricted to decree possession and damages.

**13. Ejectment ☞114—Judgment not invalid, because in form a decree as in equity.**

In an action in ejectment tried by agreement to the court, a judgment for plaintiff for possession and against the defendant for nominal damages is not invalid because it recites findings of fact following the form and substance of a decree in equity, where no equitable relief was granted; the matter in the judgment additional to the authorized relief being merely recitals not substantially affecting the rights of the parties.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Ejectment by Paul A. Ewert against James F. Robinson, executor of the estate of J. E. Pottorff, deceased, and others. From a judgment for plaintiff, the defendants bring error, and the plaintiff prosecutes cross-writ of error. Judgment affirmed.

George J. Grayston and Paul A. Ewert, both of Joplin, Mo., for Ewert.

A. Scott Thompson, of Miami, Okl. (Hiram W. Currey, of Joplin, Mo., on the brief), for Robinson and others.

Before STONE, LEWIS, and KENYON, Circuit Judges.

KENYON, Circuit Judge. Parties will be designated as in the lower court. This case involves questions arising under a certain lease executed in the month of May, 1915, by Jessie L. Imbeau, lessor, to Paul A. Ewert, lessee. The granting clause of the lease is as follows:

"Does by these presents demise and lease unto the said party of the second part, his successors or assigns, the following tracts or parcels of land, viz.: The northwest quarter of the northeast quarter of section twenty-three (23), township twenty-nine (29) range twenty-three (23) east of the Indian meridian, Ottawa county, Oklahoma, containing 40 acres, more or less, for the term of ten (10) years from the date hereof, for the purpose of prospecting, mining, drilling, boring or digging for oil, gas, asphaltum, lead, zinc, and all and every other kind or kinds of valuable mineral, ore, fossil, or vegetable substance whatever, with the right to use so much of the surface of said land, and so much of the timber and building stone found thereon as may be properly needed to successfully conduct said prospecting and mining operations; also the right of way over and across said land whereon to construct and operate such line or lines of railroad as may be necessary to carry on and prosecute the objects of this indenture; also the right to erect buildings, derricks, and pumping plants, for the business of boring, prospecting, mining, and prosecuting the object of this indenture, with the right to remove or sell any and all of said buildings, refineries, concentrating mills, machinery, and pipe lines, at any time or at the expiration of this lease."

The lease also contains the following clauses:

"The party of the second part hereby agrees to begin operations on the above-described premises within twelve months after the date of this lease; and in case operations do not begin within said stated time said second party shall pay first party ten (10) cents per acre yearly for each

and every acre contained in this lease, in lieu of said work and mining operations, as rental for said land. * * *

"The party of the first part further agrees to give to the party of the second party thirty (30) days' notice of her intention to cancel the within lease, by reason of default made in any of the conditions contained therein, by the said party of the second part, and said second party shall then have thirty (30) days within which to comply with the conditions of said lease before any forfeiture may be declared or this lease canceled.

Plaintiff executed a sublease in May, 1916, to C. A. West. West later assigned to one E. J. Bigham. Bigham sublet to J. H. Wright. Defendant Pottorff acquired the fee to said land on June 23, 1916, by a conveyance from Jessie L. Imbeau. In August, 1916, said defendant executed a mining lease to J. H. Wright, the same party who sublet from E. J. Bigham. Wright made entry upon the land about August 8, 1916. Defendant Pottorff served notice on plaintiff August 4, 1916, of forfeiture, in which notice he recited that he had taken possession of the premises. August 8, 1916, plaintiff deposited the rental provided för in the lease, viz. 10 cents per acre, in case operations were not commenced within one year from date of lease, in the bank at Joplin, and the bank notified the defendant of that fact. On August 28, 1916, plaintiff tendered the rental to defendant Pottorff in person, who refused it. Plaintiff has never been in actual possession of the 40-acre tract of land, but attempted to secure possession.

A jury was waived, and the case tried to the court, which made certain findings of fact and law, and entered judgment for plaintiff for possession, and found him entitled to nominal damages only. From the judgment of the court in favor of plaintiff's possession, defendants bring writ of error, and from the judgment of the court allowing merely nominal damages plaintiff prosecutes writ of error.

The errors assigned fairly raise the following questions:

(a) Was there forfeiture of the lease from Jessie L. Imbeau to plaintiff?

(b) Had plaintiff such interest under the contract of lease as was sufficient to sustain an action of ejectment, or was the contract a mere license or incorporeal hereditament?

(c) If the contract was a lease for a term of years, was it a lease in præsenti or in futuro?

(d) Could ejectment lie where there has been no entry by plaintiff?

(e) Was plaintiff entitled to possession at the time of the commencement of the action, in view of his lease to West and West's assignment to Bigham with his consent?

On the cross-writ of error the question of plaintiff's damage and whether or not plaintiff has preserved the right to complain in this court, in view of the fact that a jury was waived and no request for findings of fact or law made by plaintiff prior to the findings of law and fact by the court? These questions in their order.

Under the terms of the lease plaintiff agreed to begin operations within 12 months after the date of the lease and "in case operations do not begin within said stated time said second party shall pay first party ten (10) cents per acre yearly for each and every acre contained in this lease, in lieu of said work and mining operations, as rental for said land." It was further agreed that the party of the first part was

to give to the party of the second part 30 days' notice of her inten-- tion to cancel the lease by reason of default made in any of the conditions contained therein by the said party of the second part, and said party of the second part should then have the 30 days within which to comply with the conditions of said lease before any forfeiture might be declared or the lease canceled. Plaintiff did not exercise his right to develop the land within the first year. Hence he was under the necessity of paying the first party 10 cents per acre yearly for each and every acre contained in the lease. Defendant Pottorff did not become the owner of the land until June 23, 1916.

The court found as a matter of fact that at the time of the execution of the lease the lessor was indebted to plaintiff on the contract in the sum of $100, and that on June 10, 1916, he mailed to her address a check for ten cents an acre in lieu of delay money for the period of the year, and that this check was returned and not delivered to her; that on August 4, 1916, the defendant Pottorff sent by registered mail a notice of forfeiture to the plaintiff; that on August 28, 1916, plaintiff tendered in person the lieu or delay money at the rate of 10 cents per acre per year to the defendant Pottorff, which was refused. The lease does not fix the time when the 10 cents per acre shall be paid if mining operations are not commenced. It does provide for notice before cancellation, and gives to lessee 30 days after notice within which to comply with the conditions of the contract. It contains no forfeiture clause, nor any provision making the time of rental payments of the essence of the contract. Rental was tendered within 30 days after notice of forfeiture.

The question of the construction of a similar deferred operation clause is discussed by this court in the case of Smith v. McCullough et al., 285 Fed. 698, opinion filed December 23, 1922. That case, it is true, is an equity case, and in that respect differs from the case at bar. It is pertinent, however, on the question, under a similar provision, of rental where mining operations are deferred.

[1] In Aggers v. Shaffer et al., 256 Fed. 648, 650, 168 C. C. A. 42, 44, this court said, referring to the question of forfeiture of a lease there under consideration:

"Plaintiff's interest in the premises was a substantial one; it was not based on a mere unilateral option, subject to the strictest construction, and forfeitable for the slightest deviation."

Such doctrine is applicable here. The court found under all the facts there had been no forfeiture, and such conclusion was correct.

[2] The doctrine is well established that in the United States courts an action of ejectment will not lie based on a mere equitable title, notwithstanding the state statutes may provide otherwise. This is based on the constitutional distinction between law and equity. If the title that plaintiff had here were a mere equitable title, then the action as one in ejectment could not have been maintained in the federal court. McGrew v. Byrd, 257 Fed. 66, 168 C. C. A. 278; Sweatt v. Burton (C. C.) 42 Fed. 285; William Fenn v. Peter H. Holme, 62 U. S. (21 How.) 481, 16 L. Ed. 198; Hooper et al. v. Scheimer, 64 U. S. (23 How.) 235, 16 L. Ed. 452; Sheirburn v. Cordova et al., 65 U. S. (24 How.)

423, 16 L. Ed. 741; Oaksmith's Lessee v. Johnston, 92 U. S. 343, 23 L. Ed. 682; Foster v. Mora, 98 U. S. 425, 25 L. Ed. 191.

This leads to the question as to the kind of title, if any, that plaintiff acquired by his lease. Defendants claim that it was a mere license or option, and if any estate was created it is merely one in futuro, and plaintiff's right that known to the law as an interesse termini— an incorporeal hereditament. On the other hand, plaintiff claims the contract is not a license, but a lease for a term of years in præsenti. Both contentions have the support of many authorities.

In Oklahoma almost all of the leases under which such decisions have been made and doctrines announced are known as "oil and gas leases." The lease at bar is not only an oil and gas lease, but a mineral lease, and the trial court found that "it appears from the record that the land in question was 'a barren level piece of prairie land * * * in the mining district.'" Under its terms there is demised and leased unto party of the second part the 40 acres of land for the term of 10 years from the date thereof "for the purpose of prospecting, mining, drilling, boring or digging for oil, gas, asphaltum, lead, zinc, and all and every other kind or kinds of valuable mineral ore, fossil, or vegetable substance whatever, with the right to use so much of the surface of said land, and so much of the timber and building stone found thereon as may be properly needed to successfully conduct said prospecting and mining operations."

In Kolachny v. Galbreath et al., 26 Okl. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451, the question was involved of an oil and gas lease, and the court held that oil and gas, while in the earth, unlike solid minerals, are not the subject of ownership distinct from the soil, and that the grant of the oil and gas is a grant only of such a part as the grantee may find, and is not a grant of any estate therein, but merely the grant of the right to prospect, no title vesting until such substances are reduced to possession; that lessee receives a mere incorporeal hereditament, and that ejectment will not lie to recover possession of the land when the lessee has not had possession under the lease. The lease there gave to lessee the right to surrender the same upon notice. In that case, however, the court said, "though ejectment will as a rule under our statute lie to recover land held for a term of years." It is interesting to note that the learned judge who wrote the opinion in that case when a member of the Supreme Court of Oklahoma also wrote the opinions in Frank Oil Co. v. Bellview Gas & Oil Co. et al., 29 Okl. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487, Duff et al. v. Keaton et al., 33 Okl. 92, 124 Pac. 291, 42 L. R. A. (N. S.) 472, and Brunson et al. v. Carter Oil Co. (D. C.) 259 Fed. 656, and was the same judge who tried the present case.

Under an oil and gas lease construed in Frank Oil Co. v. Bellview Gas & Oil Co. et al., 29 Okl. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487, the court held similarly and drew a distinction between oil and gas leases in the rule of construction from that applied to ordinary leases or other mining leases. A leading Oklahoma case on this subject, largely relied on by defendants, is Duff et al. v. Keaton et al., 33 Okl. 92, 124 Pac. 291, 42 L. R. A. (N. S.) 472, where the court held that a

lease for oil and gas and for mining purposes is not a conveyance of real estate within section 5314, Compiled Laws of Oklahoma, 1909; that said leases under the Compiled Laws of Oklahoma are chattels real and create incorporeal hereditaments only.

In Barnes et al. v. Keys et al., 36 Okl. 6, 127 Pac. 261, 45 L. R. A. (N. S.) 178, Ann. Cas. 1915A, 515, reference is made to the case of Kolachny v. Galbreath, 26 Okl. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451, "in which it was held that an oil lease did not pass anything that could be subject of ejectment or real action." The case throws no light, however, upon the question at issue. State v. Welch, 16 Okl. Cr. 485, 184 Pac. 786, is a case in which a lease granting oil and gas mining privileges was held to be an incorporeal hereditament, and granting no corporeal interest. This case was decided November 4, 1919, and the court says:

"It is settled by the decisions of our Supreme Court that a lessee of an oil and gas and mining lease acquires no title to the land, nor oil or gas while in the ground by reason of his lease."

Same doctrine, Moore v. Sawyer (C. C.) 167 Fed. 826.

In State v. Evans et al., 99 Minn. 220, 108 N. W. 958, 9 Ann. Cas. 520, it was held that mineral leases of iron ore are not a sale of a portion of the land within the meaning of the Minnesota Constitution. This case is subsequently referred to by the Supreme Court of the United States, with approval in Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 Sup. Ct. 201, 61 L. Ed. 460. In Ency. of Law (2d Ed.) vol. 10, p. 477, it is said:

"But where the grant, by its terms, does not purport to demise the lands, or the metals or minerals therein comprised, but operates only as a license to dig, work, mine, and search for metals and minerals in and throughout the lands described, a party claiming under such grant cannot, if ousted of his possession, maintain ejectment, unless he has actually opened or worked, or is in actual possession of, the mines, for, until actual possession is taken, the right therein is floating, indefinite, and incorporeal."

In 9 Ruling Case Law, 831, 832, the rule is laid down as follows:

"It is one of the general rules governing the maintenance of actions of ejectment that the object sued for must be a corporeal hereditament, and that the action will not lie for the recovery of an incorporeal hereditament, as, for instance, for an easement or servitude, or for a mere license or right of use, or privilege. * * * Where, however, the property sued for is capable of physical delivery, it has been held to be no objection that it may be an incorporeal hereditament. Thus, for instance, while the grant of a right to quarry and remove stone from land for a specific purpose passes an incorporeal hereditament to the grantee, such right is an interest in or a right arising out of land, and such constitutes a foundation for an action of ejectment."

Defendants urge also, as controlling, the decisions of the Supreme Court of the United States in Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 Sup. Ct. 201, 61 L. Ed. 460 (in which the opinion of this court in 219 Fed. 31, 134 C. C. A. 649, was reversed), and United States v. Biwabik Mining Co., 247 U. S. 116, 38 Sup. Ct. 462, 62 L. Ed. 1017, in which 242 Fed. 9, 154 C. C. A. 601, was reversed. The holdings of the Supreme Court in these cases establishes the doctrine that, as to a mining lease such as there involved, the lessee is

not a purchaser of the ore in place; that the lease does not operate as a conveyance of the ore as part of the realty, and recognizes the doctrine laid down in State v. Evans, 99 Minn. 220, 108 N. W. 958, 9 Ann. Cas. 520. The decisive question in Von Baumbach v. Sargent Land Co. was whether the payment of royalties under such leases amounted to income so as to bring such payments within the scope of the Corporation Tax Act of 1909 (36 Stat. 112), or whether the payments were the proceeds of an outright sale of mining property. They do establish the doctrine, as in the cases cited from the Oklahoma Supreme Court, that leases of this character are not a grant of the oil, gas, or of the minerals in the earth. We do not consider they are at all decisive of the question at issue here.

In some of the cases a distinction is drawn between mere oil and gas leases and leases covering solid minerals in the earth as to the nature of interest acquired by lessee. This court in Parker v. Riley et al., 243 Fed. 42, 47, 155 C. C. A. 572, 577, referred approvingly to the doctrine of Kolachny v. Galbreath, 26 Okl. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451, "that a grant by lease of oil and gas, when it is in the ground, is a grant, not of the oil and gas in the ground, but of such part of the oil and gas as the lessee finds and reduces to possession," and that such a lease does not convey a corporeal hereditament, and says, "And such is also the holding by this court." Likewise in Priddy v. Thompson, 204 Fed. 955, 123 C. C. A. 277, this court draws a distinction between oil and gas in the earth, and ore and coal.

[3] We are not dealing here with the question of whether such leases are a grant of the oil and gas or mineral within the ground. It is settled by the decisions of the Supreme Court before referred to that they are not. The mere fact, however, that such leases are not a grant of the oil or gas or mineral in the ground, is not a finding that they may not by their terms convey an interest in the land, or grant more than a mere license or incorporeal hereditament. That question is determined largely by the language employed in the particular leases involved. No rule applicable to all cases could be established. That a lease such as this is more than a mere license is, we think, settled in Oklahoma by the case of Rich v. Doneghey et al., 177 Pac. 86, 89 (3 A. L. R. 352), and while the court there says the right granted and held separate and apart from the possession of the land itself is an incorporeal hereditament, yet the court also said after citation of various holdings as to the nature of interest conveyed in such leases:

"Bearing these principles in mind, it will at once be seen that by this instrument the plaintiffs granted to the defendant a present vested interest in their land."

Further quoting from the same case (177 Pac. 90 [3 A. L. R. 352]), the court said:

"Though denominated a lease, and in deference to custom will be so referred to herein, the instrument before us, strictly speaking, is not such, but it is in effect a grant in præsenti of all the right to the oil and gas to be found in the lands described, with the right for a term of five years to enter and search therefor, and, if found, to produce and remove them, not only during said term, but also as long thereafter as either is produced, and

to occupy so much of the surface of the land as may be necessary for the purpose of exploration or production, or both."

In Northwestern Oil & Gas Co. v. Branine (Okl. Sup.) 175 Pac. 533 (3 A. L. R. 344), leases known as "unless leases" and "or leases" are discussed, particularly the effect of a surrender clause in the lease. There is no surrender clause at lessee's option in the lease in question, and in that respect it is distinguished from many of the Oklahoma leases. Where the surrender clause exists, some of the cases base thereon their decision that the lease is a mere option contract. In Maddin v. Robertson et al., 38 Okl. 526, 133 Pac. 1128, it is held that a mortgagee has such interest as will support an action of ejectment for possession. This was upon a mortgage executed before the admission of the state into the Union, and in that part of the state which was formerly the Indian Territory. See, also, Moore v. O'Dell, 27 Okl. 194, 111 Pac. 308. In Eldred v. Okmulgee Loan & Trust Co., 22 Okl. 742, 98 Pac. 929, it was held that a lease is an alienation of land within the intent and meaning of the Act of Congress of April 21, 1904, c. 1402, 33 Stat. 204. The court concludes that such lease conveys an estate and "is an alienation by deed," within the meaning of the act of Congress. In Shaffer v. Marks et al. (D. C.) 241 Fed. 139, 142, the court held:

"Whether the right conveyed by an oil and gas lease be termed a chattel real, an incorporeal hereditament, or what not, it is nevertheless a right or interest relating to real property, although not arising to the dignity of an estate, and as such right or interest is property, and may be the subject of transfer."

Aggers v. Shaffer, 256 Fed. 648, 168 C. C. A. 42 (this circuit), involves an oil and gas lease of the ordinary kind, and it was urged that the plaintiff's suit was for specific performance of an optional, unilateral contract, and was therefore an action to recover upon a mere chose in action within the meaning of section 24, Judicial Code (Comp. St. § 991), and that the citizenship of plaintiff's assignor, not being disclosed, the jurisdiction of the court below did not appear. The court says:

"It is enough to say of this that by the law of Oklahoma, where the land is, a lease like that held by plaintiff grants a present vested interest in the premises, * * * and that the right he sought to protect and enforce is not a chose in action within the meaning of section 24 of the Judicial Code."

In the case of In re Indian Territory Illuminating Oil Co., 43 Okl. 307, 142 Pac. 997, it was held that oil and gas lying in the strata of the earth constitute a sort of subterranean feræ naturæ, which must be taxed as real property to the owner of the land, and cannot be taxed against one who has a mere lease or license to go upon the premises for the same and take them away. In Priddy v. Green et al. (Tex. Civ. App.) 220 S. W. 243, held that an oil lease giving the right to enter and drill for oil was more than a mere license. In Beckett-Iseman Oil Co. v. Backer, 165 Ky. 818, 178 S. W. 1084, held that an oil and gas lease giving to lessee the right to explore lands and remove therefrom the oil and gas is a contract for the transfer and sale of an in-

terest in lands and must be in writing. In Lindlay v. Raydure (D. C.) 239 Fed. 928, held that an oil and gas lease, conveying the oil and gas in the land and leasing for the purpose of drilling, did not convey a vested interest in the oil and gas, but did convey a vested interest in the right to explore for oil and gas, and that such lease was not executory, but was executed as much as any other lease. The court there said (page 934):

"That an estate in the surface of the land of some character vests in the lessee immediately upon the execution of the instrument I do not understand to be questioned anywhere. Possibly there is some question as to the exact nature of the estate which vests, but otherwise there is none."

Archer's Law and Practice in Oil and Gas Cases, c. 3, § 1, lays down the rule as follows:

"A grant of the exclusive privilege to go on land for the purpose of prospecting for oil and gas is, until oil or gas is discovered in paying quantities, merely a license, and does not vest in the grantee any estate in the surface of the land or the minerals therein; but, where by such grant the land is granted with such exclusive privilege, it is a lease conveying an interest in the land, and not merely a license to enter and explore for oil or gas."

In Kirk v. Mattier et al., 140 Mo. 23, 41 S. W. 252, it was insisted by the defendant that ejectment would not lie because of the claim that the instrument created merely a license to dig, and not an estate; in other words—an incorporeal right. The lease "demised and leased" a tract of ground for mining purposes for a period of ten years. The court (140 Mo. on page 33, 41 S. W. 254) said:

"We have no hesitancy in holding that this instrument was a lease and that in a proper case ejectment will lie for the land and the estate acquired thereby. Ejectment will lie for any corporeal hereditament of which the sheriff can deliver possession."

A case perhaps more nearly in point than any other is Barnsdall v. Bradford Gas Co., 225 Pa. 338, 74 Atl. 207, where it was held that a lease for mining and operating for oil, gas, and other minerals and of laying pipe lines and of building tanks, etc., conveyed an interest in the land, and not merely a license to enter and operate for oil or gas, and that ejectment could be maintained, even though the lessee had not entered into possession. The court refers in the opinion to the clearly defined distinction between agreements which create a lease of the land for mineral purposes and those which are simply a license giving to the licensee authority to enter and dig for minerals. Same doctrine, Barker v. Dale, 3 Pittsb. Rep. 190, Fed. Cas. No. 988.

[4] It would unduly extend this opinion to further review authorities on this question. They are in irreconcilable conflict. We believe the distinction pointed out in 27 Cyclopedia of Law and Procedure, p. 690, as follows, is the correct one:

"A contract simply giving a right to take ore from a mine, no interest or estate being granted, confers a mere license, and the licensee acquires no right to the ore until he separates it from the freehold. But an instrument that demises and leases certain lands for mining purposes only, for a designated term of years, at a fixed rent, and giving the right to erect all necessary buildings, etc., is a lease, and not merely a mining license."

[5] If the contract here simply gave, with no fixed term, a right to take oil and gas or mineral from the land without any further rights being granted, it would be a mere license; but this instrument is more. It uses the terms "demised and leased." It gives the right to use the surface needed. It gives the privilege of rights of way for such necessary railroad construction to carry out the mining operations. It gives the right to erect buildings and all of this "for the term of 10 years." It is true, the words "for the purpose" are used, and these are the words that raise doubt as to its construction. But, taking the entire instrument as a whole, it seems to be a demise of an interest in the land. In other words, a lease is granted for a fixed term of years; a right created to use the land for the necessary purpose of and for the term specified in the lease. This was the intention of the parties. There was no clause providing for a surrender of the lease by the lessee upon payment of some nominal sum, such as is found in many of the Oklahoma oil leases. It was not a mere option, and did not come under the class of leases designated by the Oklahoma courts as "unless" leases. The trial court was of the opinion, and so found, that the lease did not create an option, but under its terms at its execution rights vested in the premises. We think this correct. While the lease did not amount to a conveyance of the oil or gas or mineral in the ground, it did amount to a conveyance of an interest in the land, and was not a mere license.

Defendants strongly insist that, even if plaintiff did secure under the laws of Oklahoma an estate sufficient upon which to base an action of ejectment, before such action could be brought there must have been an entry by lessee. That a tenant for years acquired only a right of entry was fundamental doctrine of the common law. It is not the modern doctrine, however, as to the United States. It was the ancient theory that a tenant for years before entry could not maintain ejectment, because before actual entry he had merely what was termed an interesse termini, and, not having been in possession, the same could not be affected. Such reasoning does not apply to the modern theory of remedy by ejectment. The action was a development of the courts, and evolved gradually into a method of determining possessory titles to freeholds, as well as terms for years.

[6] Many of the ancient rules in respect to actions of ejectment relate to copyhold estates, in which the lord of the manor was a prominent personage, bringing his action against the tenant of copyhold premises. Some authors and early English cases discuss interestingly and learnedly the sufficiency of a title of a guardian in socage or guardian for nurture to sustain ejectment. These things relate to a far-distant past. They are strangers to the jurisprudence of the United States. The modern tendency of jurisprudence is to look through shadows to substance—to eliminate technicalities in the interest of substantial justice. It is no longer necessary to go upon land as in the days of old and receive a twig or a clod of dirt as a token of changed possession. The delivery of the deed or lease accomplishes the same thing and in a much less cumbersome manner. In the more modern doctrine of ejectment, entry is not a prerequisite to the action, and if

the lessee has such interest in the property as gives a present right of possession, it is immaterial whether he has entered into possession before bringing the action. The right of entry, not the entry itself—the right of possession, not actual possession—are the essentials of an action in ejectment. We refer to some of the views of the text-book writers and courts relating to this subject:

Tyler on Ejectment, 167:

"The action of ejectment, although in form a fiction, is in substance a remedy pointed out to him who has a right to the land, of which he is wrongfully deprived; and it is usually the title of the lessor, and not of the nominal lessee, that is to be decided."

Also (page 169):

"Clearly, a tenant for life, or for years, has the exclusive right of possession of the land, and his title, therefore, enables him to maintain the action of ejectment, and that whether he claim in his own right or in right of his wife. Indeed, the very object of the remedy by ejectment in its original conception was to enable one who had a lease for years to repair the injury done him by dispossession, and enable him to recover his term. And it seems that where a tenant in tail aliens in fee, the issue in tail, after the death of such tenant, may bring ejectment to recover the premises, without an actual entry."

See, also, Adams on Ejectment, p. 60.

Taylor's Landlord and Tenant (8th Ed.) vol. 2, § 698:

" * * * The principles of the action remain the same as at common law, and although its proceedings have been changed, and much of its quaint and useless machinery abolished, both in England, and the United States, the right to make an entry still continues requisite, though the entry itself is unnecessary."

Tiedeman on Real Property (3d Ed.) § 131:

" * * * Under the present theory in regard to this action, it is equivalent to common-law entry, and can be maintained by any one who has a good title and an immediate right of entry."

Warvelle on Ejectment, § 156:

"*Tenants for Years.*—It was a fundamental rule of the common law that a tenant for years, by the execution of a lease, acquired only a right of entry upon the demised lands, and until such entry had been made he could exercise no possessory rights with respect to same. For this reason it was early held that such tenant could not, before entry, maintain an action either of trespass or ejectment, because as those actions complain of a violation or ouster of possession they could not be maintained by one who never had an actual possession. But this doctrine has been expressly rejected in the United States, where an estate for years is both created and perfected by the execution and delivery of a lease for the term, and such lease, while it confers no rights of ownership, does carry a right to the possession and profits of the land."

"As ejectment, in its essence, is still a possessory action, it follows that a tenant for years, with the term still unexpired, has a full and generally exclusive right to bring the action against any person, who may invade his possession. In fact, it will be remembered, the original purport of the action of ejectment was to enable a tenant for years who had been ousted to recover his term."

The basic theory of the action is laid down by Lord Mansfield as far back as Atkyns v. Horde, 1 Burr. 119, as follows:

"An ejectment," says he, "is a possessory remedy, and only competent where the lessor of the plaintiff may enter; and every plaintiff in ejectment must show a right of possession as well as of property."

In Cincinnati v. White, 6 Pet. 431, on page 441 (8 L. Ed. 452), the court lays down the right of possession as the test, as follows:

"This is a possessory action, and the plaintiff, to entitle himself to recover, must have the right of possession; and whatever takes away this right of possession will deprive him of the remedy by ejectment."

In Toland v. Mandell, 38 Cal. 30, 43, the court says:

"To maintain ejectment, a right of entry and possession is all that is required."

In Marshall v. Shafter, 32 Cal. 177, 194, it is said:

"It is the right to the possession as between the parties that is tried, and that fact, when ascertained, determines how the recovery shall be. This right to the possession is title—'the means whereby the owner of lands hath the just possession of his property.'"

In Hurst v. Sawyer, 2 Okl. 470, 37 Pac. 817, it was held that the action of ejectment lies to recover lands held under lease for a term of years. In Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618, the court lays down the right of possession as the test of the action. In Stoddard v. Chambers, 2 How. 284, 11 L. Ed. 269, it was held that an action of ejectment could be maintained on a title by estoppel.

In Blanchard v. Reed et al., 168 Pac. 664, the Supreme Court of Oklahoma held that it was not essential that plaintiff have all the title; that it was only essential that he have some kind of an estate in the property sought to be recovered, either legal or equitable, which is paramount to the interest or claimed interest of the defendants. And while this case would seem to hold that ejectment in Oklahoma could be based on an equitable title alone, such would not be sufficient, of course, in the federal courts. The same doctrine is held in Duffey v. Rafferty, 15 Kan. 9; Riggs v. Anderson, 47 Kan. 66, 27 Pac. 112. These cases are referred to merely as showing the modern tendency, and not to sustain any doctrine that an equitable title alone would be sufficient in the federal courts on which to maintain ejectment.

In Tarpey v. Desert Salt Co., 5 Utah, 205, 214, 14 Pac. 338, 341, it is said, speaking of actions of ejectment:

"It is the right of possession, as between the parties, that is tried, and the right of possession is the title. * * * The abstract right to the soil is not tried, but the action is to recover the actual possession."

The court further said:

"The lease is not an equitable title, but it is in its nature legal. It is not the title in fee, but it is of the same nature, yet a less estate—one of a lower grade. It is embraced within the fee, and is in subordination to it. The fee title includes the right to the possession. A party may convey a part of his right—his right to the possession."

The same court holds that it is not necessary to show an estate clear to a fee, but merely enough to show right of entry and possession.

In Beatty v. Gregory, 17 Iowa, 109, 85 Am. Dec. 546 (opinion by Judge Dillon), the general rule is stated to be that ejectment will lie for

anything of which the sheriff can deliver possession; that it may be maintained for corporeal, but not for incorporeal hereditaments, and on page 116:

"* * * As applicable to miners and mining interests, this distinction results from the above rule: A privilege to dig, not amounting to an actual demise of the mines, as an incorporeal hereditament, and, consequently, ejectment will not lie."

Further quoting (page 117):

"Many of these cases, while holding that ejectment lies for an open mine, throw no light upon the question as to the interest in the plaintiff necessary to maintain the action. On this subject, Mr. Adams is of opinion (Eject. p. 20, marg.) that 'when a grant of mines is so worded as not to operate as an actual demise, but only license to dig, search for, and take metals and mineral within a certain district, it seems that a party claiming, under such a grant, and who shall open and work, and be in actual possession of, any mines, may. if ousted, maintain ejectment with respect to them; but he cannot maintain ejectment, either in respect of mines within the district' (i. e., lying within the bounds of his privilege), 'which he has not opened, or which, having opened, he has abandoned.' "

The court in this case applies the rule that, where there is a mere license to dig, search for and take metals, the party must be in actual possession before action for ejectment can be maintained; and on that doctrine the cases are in accord. Likewise it has been held by the courts that an action to quiet title cannot be maintained by one having the equitable title alone. In Frost v. Spitley, 121 U. S. 552, 556, 7 Sup. Ct. 1129, 1131 (30 L. Ed. 1010), the court said:

"A person out of possession cannot maintain such a bill, whether his title is legal or equitable; for, if his title is legal, his remedy at law, by action of ejectment, is plain, adequate, and complete, and, if his title is equitable, he must acquire the legal title, and then bring ejectment. United States v. Wilson, 118 U. S. 86; Fussell v. Gregg, 113 U. S. 550."

In Holland v. Challen, 110 U. S. 15, 25, 3 Sup. Ct. 495, 501, 28 L. Ed. 52, another action to quiet title, the court says:

"Undoubtedly, as a foundation for the relief sought, the plaintiff must show that he had a legal title to the premises."

The exception to the general rule as to actions to quiet title will be found to be based upon the state statutes making possession unnecessary. In Anderson v. Messenger, 158 Fed. 250, 260, 85 C. C. A. 468, 478, the court says:

"The fundamental question in an action of ejectment is to whom does the right of possession belong."

In Thompson v. Underwood, 138 Ark. 323, 211 S. W. 164, it was held that one who located a mining claim could maintain ejectment for possession of land against a trespasser, although he had leased the mining claims to another. In Brown v. Armenta et al., 21 Ariz. 334, 188 Pac. 260, it was held that an action of ejectment lies to recover land held under a lease for a term of years; that the holder of the lease founds his recovery upon his interest in the land arising from the ownership of the lease.

In Johnston v. Corson Gold Mining Co., 157 Fed. 145, 84 C. C. A. 593, 15 L. R. A. (N. S.) 1078, the court discusses a lease very similar

289 F.—48

to the one in question here and holds that a suit in equity cannot be maintained by one out of possession under such circumstances, and that there is a complete remedy at law in the action of ejectment, pointing out that the estate of plaintiff could not have been perfected before entry, but that his interest as lessee was such that, though not in actual possession, he had a present interest in the term and could maintain ejectment. The court said, where there is a legal title, and one who holds it is kept out of possession by defendants holding adversely, the remedy is at law to recover possession. To the same effect, Barker v. Dale, 2 Fed. Cas. 810, No. 988. See, also, 15 Cyc. 23; Long v. Bagwell, 38 Okl. 312, 133 Pac. 50; Trull v. Granger et al., 8 N. Y. 115.

[7] There is a provision in the lease that, if any valid mining leases shall be found to exist, then the covenants made to commence prospecting and mining operations should be suspended until the expiration of such lease as might be found to exist, "and until the first party shall place second party in undisputed possession of said premises." That provision relates only, however, to a situation where other leases are found to exist. It does not constitute a condition precedent to the taking effect of the lease. It does not appear that any other leases were found to exist, and that provision is only to cover a case of that kind.

[8] These cases and views of text-book writers sustain the modern theory of ejectment, that where a party has a lease for a fixed term of years, and not a mere license, granting the right to occupy premises to the exclusion of others for the purpose of taking crops from the surface or mineral from under the surface and the present right of entry exists, it is not necessary that such entry be made as a prerequisite to the action of ejectment. Under the lease in suit plaintiff acquired an interest in the land. The term under the lease commenced at once, and plaintiff was entitled to the possession for such purposes as necessary to carry out the rights granted under the lease. Defendant had notice that he was taking said premises subject to any legal mining lease thereon for such notice is in the deed under which he acquired title.

It is insisted that at the time of commencing action plaintiff had no possessory right of any nature because of his lease to West and West's assignment thereof with plaintiff's consent to Bigham. The testimony on this subject is confusing and unsatisfactory. Ewert testified that he did not approve by correspondence the assignment from West to Bigham, and letters were subsequently produced written by Mr. Ewert to Mr. Bigham showing that he was cognizant of Bigham's having the lease.

[9] In the mining lease from plaintiff to West made on the 20th day of May, 1916, is a provision that the contract, nor any of the rights thereunder shall be assignable without the written consent and permission of the party of the first part, "and any such unauthorized sublease will operate as a forfeiture of this lease." We think the record fairly shows that plaintiff did consent to the sublease from West to Bigham. Bigham made his contract with Wright on the 27th of February, 1917, without any consent on the part of plaintiff, and this operated as a forfeiture as to any rights on Bigham's part.

The plaintiff testified that West delivered the lease back to him in the latter part of 1916, that being before this suit was brought. This is denied by West. So it is apparent that the whole question as to whether or not plaintiff had possessed himself of his rights under the lease and before the action was commenced involves a disputed question of fact, upon which the trial court has passed, and we are not at liberty to disturb it, as there is evidence to sustain such finding.

### Cross-Writ of Error.

Some questions on the cross-writ of error are eliminated by the condition of the record.

[10, 11] On·the 19th day of July, 1920, the trial court filed its findings of fact and conclusions of law. These were amended by interlineation and refiled October 30, 1920. Plaintiff up to that time made no request for findings of fact or conclusions of law, and the court found and made of record, October 30, 1920, that the plaintiff at no time during the trial of the case or prior to the filing of the application for amended findings of fact and conclusions of law had made any request for such findings and conclusions. This brings the case as to this matter squarely within the decision of the court in Ewert v. Thompson et al. (C. C. A.) 281 Fed. 449. The request for the findings of fact and conclusions of law were too late. The case was tried by the court upon agreement waiving a jury. Its finding is similar to the verdict of a jury, and could be assailed only on the ground that there was no substantial evidence to support it. Nearly all of the complaints by plaintiff on his cross-writ of error, as set forth in his assignments of error, are complaints against the findings of fact and conclusions of law of the court. Under the circumstances we cannot here review any alleged errors of fact. Wear v. Imperial Window Glass Co., 224 Fed. 60, 63, 139 C. C. A. 622; Ewert v. Thompson et al. (C. C. A.) 281 Fed. 449.

There are some exceptions to rulings on evidence that were preserved, and some of the rulings are doubtful; yet, viewing the whole record of the case, without regard to technical errors, exceptions, or want of exceptions, which do not affect the substantial rights of the parties, we feel the action of the court in allowing but nominal damages was correct.

[12, 13] It is contended that the judgment rendered is in fact a decree in equity which the court had no power to enter. There was no authority in the court in the action of ejectment to grant equitable relief. The only relief that could be granted was judgment for possession and for damages. In the findings of the court he stated:

"Judgment will be entered in favor of plaintiff for possession and against the defendant for damages in the sum of $1. An order will accordingly be entered."

That was the judgment the court evidently intended should be entered, and that would have been the proper judgment entry. In the judgment itself, as appears in the Record, No. 5812, commencing at page 27, are certain adjudications which apparently are in the nature of a decree, but most of which, we think, upon close analysis, are mere

findings of fact. There is one adjudication and decree in the nature of an equitable finding, namely, that the mining lease was a valid lease, and that the plaintiff is entitled to possession of said lands for mining purposes. It is hardly a cause for substantial complaint, however, as the same question is involved in the judgment. There could not be a judgment for possession unless the lease was a valid lease. The real judgment is entered in the following words:

"Wherefore it is hereby ordered, adjudged, and decreed that the mining lease under which plaintiff claims is a valid, subsisting mining lease on said premises, and that he is entitled to the possession of said premises for mining purposes under said lease as against the said defendants, and that the plaintiff have judgment against the defendants for damages in the sum of one dollar and for his costs in this behalf laid out and expended, and that a writ of possession for said premises be forthwith issued in favor of the plaintiff and against the defendants for the possession of the hereinbefore described lands for mining purposes."

The balance of the judgment entry, we think, consists of mere findings of fact, and whatever apparently may be in the nature of a decree merely covers the matter embraced within the judgment. Our affirmance is limited strictly to the judgment for possession and damages as above set forth. Said judgment for possession is not to interfere with the fee owner's superior rights, so long as he does not obstruct plaintiff in error in exercising the rights which the lease gives to him.

After writs of error were taken to this court, J. E. Pottorff, defendant in error in case No. 5812 and plaintiff in error in case No. 5821, died. The matter was brought to the attention of the court by motion duly filed, and it was ordered that the cause be revived as to said defendant in error in No. 5812 in the name of James F. Robinson executor of the estate of J. E. Pottorff, deceased, and that such cause henceforth proceed in the name of said executor, with the same force and effect as if the said J. E. Pottorff had not deceased, and in No. 5821 it was ordered by this court that the cause be revived as to said plaintiff in error in the name of James F. Robinson, executor of the estate of J. E. Pottorff, deceased, and that such cause henceforth proceed in the name of said executor with the same force and effect as if the said J. E. Pottorff had not deceased. Therefore whatever judgment is rendered in this case should run against James F. Robinson, executor of the estate of J. E. Pottorff, deceased, and defendant A. Scott Thompson; and it is so ordered.

Finding no sufficient error to warrant a reversal of this case, the judgment is affirmed.