PETROLEUM EXPLORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE WISER OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PETROLEUM EXPLORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24698, 24699, 25213.   Promulgated February 5, 1951.

*William J. Brennan, Esq.*, and *John Wiseman, C. P. A.*, for the petitioners.

*A. W. Dickinson, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge:* (a) For what period had the petitioners held the oil property sold by them to The Texas Company on January 31, 1939?[1] The petitioners' view is that under the lease of March 2, 1937, it was optional with the lessee to explore the leased premises; that it had no interest in the oil, if any, that might underlie the premises until it had exercised the option to explore and found the oil; that according to the economic and practical consequences of the transaction the property sold by petitioners to The Texas Company on January 31, 1939, was their interest in the oil in place under the premises, together with the operating equipment which had been installed for its recovery, and that the property so sold was not acquired earlier than September 14, 1938, when the oil in place was first found. The respondent contends that the property sold on January 31, 1939, was the oil and gas lease made on March 2, 1937; that the property had been held since March 2, 1937, and that the capital gain on the sale was therefore long term capital gain.

The parties have briefed this question at length, and many cases have been cited showing the thought, not always consistent, devoted by the courts to theories as to the fugacious nature of oil and gas,

---

[1] This fact is of prime importance here because it determines whether, in computing petitioners' excess profits credits (including any unused excess profits credits of Petroleum Exploration), the gain on the sale on January 31, 1939, represents long term capital gain not to be included in excess profits net income for 1939. In other words, this question affects the amount of excess profits credit under section 711 (b) (1) (B) of the Internal Revenue Code.

the interpretation of "unless" and "or" leases, with more particular reference to the law of Illinois, the situs of the land here involved, and the nature of rights to oil and gas as related to such questions as depletion, conveyance, etc. It is not considered necessary to discuss the many citations accumulated. No case involving exactly the question here posed is presented. After study of the authorities cited, and others not suggested, we are of the opinion that the petitioners have not shown that what was sold on January 31, 1939, was (for purposes of sections 711 (b) (1) (B) and 117 of the Internal Revenue Code, as to capital gains and losses and exclusion of long term capital gains and losses from excess profits net income) not the same as acquired on March 2, 1937, and therefore have not shown that the sale resulted in short term capital gain. Though discussing the "option" involved in the "unless" lease here involved, the petitioners on brief argue that there is little difference save in form between an "unless" lease and an "or" lease with a surrender clause. Analysis of the many cases on the general nature of oil and gas leases, with recognition that in Illinois, as in other states except Texas, oil in place is not recognized as the subject of ownership, leads us to the conclusion that the petitioners on January 31, 1939, disposed of essentially the same basic rights as acquired when the lease was made, and that the petitioners' theory of change to a property in the oil and gas in place upon the discovery of oil late in 1938 can not be sustained. The petitioner cites *Bonwit Teller & Co.* v. *Commissioner*, 53 Fed. (2d) 381, for the statement that "upon the lessee's electing to exercise its option to explore and its discovery of oil, the delay rentals ceased and it acquired a new term for a new consideration, that is, as long as the oil should be produced, for one-eighth thereof." The *Bonwit Teller* case is no authority for such view. It involved no oil and gas lease, but a lease upon improved premises in New York City and the question whether, in computing exhaustion for tax purposes, the exhaustion could be extended beyond the 19-year term of the lease because of an option to renew for 21 years at a rental to be determined by appraisal, which "renewal privilege had not been exercised and may never be." We find nothing in the case helpful here. Upon execution of the leases here the lessees acquired the right to explore for, produce, remove and sell oil and gas. That right was assigned by them on January 31, 1939. It is to be noted that the conveyance carefully did not cover the oil which had been produced up to that time. In short, there was not conveyance of oil reduced to possession, but of the right *in futuro* to reduce it to possession. That right was obtained in the lease on March 2, 1937. It is true that at that time there was also the right to delay the search for oil by payment of annual rentals, for 10 years, the necessity for payment of which rentals ceased with development of oil; but from the inception of

the lease, to the assignment, there inhered in the contractual relations of the parties the right of the lessee at any time to explore for oil or gas for 10 years, and if exploration was successful to continue to so explore, and to take and sell the products, so long as oil or gas was produced. This right was not essentially altered by the discovery and production of some oil about September 1938. Thereby, in strict accord with the rights conferred by the lease, some oil was reduced to possession. But that does not mean, as the petitioners contend, that then and thereby the petitioners acquired a new and different right to the remainder of the oil, in place, so that they could and did on January 31, 1939, sell a property right not owned prior to September 1938. The lessees' right, as to oil in the ground, remained one merely to explore for, bring it to the surface and dispose of it. Because six wells had produced oil did not necessarily mean that others would do so. A "dry hole" may be encountered a short distance from a producing well. Though a well, or six wells, may demonstrate the probability of underlying oil, such oil may, unless earlier secured by extraction from the ground, be depleted and taken to some extent at least by offsetting wells on adjoining land, so far at least as the oil lies near boundary lines, and the lessee must protect against this.[2] This demonstrates that the lessee by discovering oil does not become the owner thereof in place, but merely continues to have his lease-given right to reduce to possession the oil, which, by lack of diligence, if it is near boundaries, he may never possess.

The petitioners appear to think that merely because one or more wells are drilled on a lease to oil sands and oil is found that the entire subterranean oil in place has become the property of the lessee. It is true that the word "find" as used in some cases refers to ownership of oil found; but it is clear from the weight of authority that ownership of the oil reservoir under a lease results not merely from discovery but by its reduction to possession. The Supreme Court in *Ohio Oil Co.* v. *Indiana (No. 1)*, 177 U. S. 190, finds such ownership "after the result of his borings has reached fruition to the extent of oil and gas by himself actually extracted and appropriated," and later "when they [oil and gas] escape and go into other land or come under another's control the title of the former owner is gone." In *Jones* v. *Forest Oil Co.*, 44 Atl. 1074, it is thus expressed: "actually in his grasp and brought to the surface" and "actually reduced by him to possession." Of course, oil brought to the surface belonged to the lessees here; but that was not the subject of the sale on January 1, 1939. We can not agree that, except as to oil reduced to possession, the lessees

---

[2] *Coffinberry* v. *Sun Oil Co.*, 67 N. E. 1069; *Cooper* v. *Ohio Oil Co.*, 108 Fed. (2d) 535; *Phillips Petroleum Co.* v. *Taylor*, 115 Fed. (2d) 994.

had, merely by discovery of some oil, become the owners of the other oil, in place. That the Federal revenue law allows a right to depletion proves nothing different. Depletion is based upon economic interests and not on "oil in place." Though, of course, the discovery of oil about September 1938 increased the value of the lessees' rights, that was only because of demonstration of the increased probability of profitable extraction of oil from the wells drilled, or others, over the previous uncertainty as to production, but there was no new right to the oil in place. It has often been held that the object of a lease is development and that failure to continue reasonable development after discovery may be ground for cancellation of lease, at least as to undeveloped portions.[3] This indicates that the lessee owns, not the underlying oil in place by finding some oil, but the contractual right to produce it. But this right he had from the day of execution of the lease; and this is the right which the petitioners assigned to The Texas Company. One of the leading cases on the nature of oil and gas leases is *Rich* v. *Doneghey*, 71 Okla. 204, 177 Pac. 86. It points out that mere discovery does not give title to oil in place and at the same time defines the essential nature of a lease, as follows:

* * * Although there had been in terms a purported conveyance of all the oil and gas in the place, yet, by reason of the nature of these substances, no title thereto or estate therein would have vested, but only the right to search for and reduce to possession such as might be found; and when reduced to possession, *not merely discovered*, title thereto and an estate therein as corporeal property would vest, * * * [Citations] Though denominated a lease, and in deference to custom will be so referred to herein, the instrument before us, strictly speaking, is not such, but is in effect a grant in praesenti of all the right to the oil and gas to be found in the lands described, with the right for a term of five years to enter and search therefor, and, if found, to produce and remove them, not only during said term, but also as long thereafter as either is produced, and to occupy so much of the surface of the land as may be necessary for the purpose of exploration or production, or both. [Emphasis added.]

Cases such as *Helvering* v. *San Joaquin Fruit & Invest. Co.*, 297 U. S. 496, involving mere options, later exercised to purchase property, are found of no help here. In common parlance petitioners bought a lease, and sold it. They might have sold it before finding oil. They received more for it because they had made discovery. But they assigned no right or property not possessed before discovery. They did not possess title to oil in place, except when reduced to possession, either before or after discovery of oil in one well, or six wells, but only the original right to extract and sell it. *Triger et al.* v. *Carter Oil Co.*, 372 Ill. 182, 23 N. E. (2d) 55; *Ohio Oil Co.* v. *Indiana, supra.* In the recent case of *Phillips Petroleum Co.* v. *Jones*, 176 Fed. (2d)

[3] *Sauder* v. *Mid-Continent Petroleum Corp.*, 292 U. S. 272; *Thomason* v. *United Gas Public Service Co.*, 98 Fed. (2d) 526; *Myers* v. *Shell Petroleum Corp.*, 110 Pac. (2d) 810; *Huggins* v. *Daley*, 99 Fed. 606.

737, it was held that an "unless lease," such as here involved, "is a chattel real, a profit a prendre, or an incorporeal hereditament, which grants only the exclusive right * * * to explore by drilling operations; to reduce the possession, and thus acquire title to the oil and gas, which is personalty." Pointing out that an oil and gas lease is within the statute of frauds as to real estate, is a conveyance within homestead laws, and a grant of real property with reference to breaches of covenants as to real property, and possesses many other attributes of realty, the court concludes that the lease is realty for stamp tax purposes, when executed conveying lands, tenements and other "realty." Though of course not involving this particular question, the case is in principle opposed to the idea that prior to production an "unless" lease is nothing more than an option for any purpose, as in effect petitioners contend. In *Ewert* v. *Robinson*, 289 Fed. 740, a lease is called more than a mere license. *Gloyd* v. *Midwest Refining Co.*, 62 Fed. (2d) 483, relied upon by the petitioners, says that an "unless" lease is "more than a mere option to acquire a right." If based on a consideration it gives the lessee a present right or license to enter upon the leased premises and explore for and develop oil or gas therein and the right, on the performance of certain conditions, to extend that license to enter and explore. "* * * it is a present existing right which he may exercise with respect to the leased premises, and not a mere option to acquire such a right." Equitable relief was granted against an attempt to cancel the lease for failure to pay rental on time. After reviewing many cases, none precisely in point but involving principles here of interest, we conclude and hold that the petitioners held the property sold on January 31, 1939, from March 2, 1937, therefore that the capital gain upon the sale was long term and properly excluded from computation of excess profits net income as to the years involved here.

(b) There remains for consideration the question whether the acquisition and holding by Petroleum Exploration of $825,000 in stock of Southern Petroleum Exploration, in 1945, resulted in a net capital reduction under section 713 (g) (5) of the Internal Revenue Code. The issue was raised by respondent's affirmative answer. The facts were stipulated, as set forth above, but need not be again recited here, for the parties are in tacit if not verbal agreement that the answer depends only upon whether two corporations constitute a "chain" within section 713 (g) (5). It is not suggested that the facts do not otherwise come under the statute. Petitioners merely suggest that, though mindful of our opinion in *Morganton Full Fashioned Hosiery Co.*, 14 T. C. 695, that two links form a chain, they do not agree that Petroleum Exploration as parent corporation and Southern Petroleum Exploration as "offspring" can be a chain. No distinction is suggested and in the *Morganton* case the two links were the petitioner as

parent corporation and its wholly owned subsidiary, and we specifically held that "chain" included parent and subsidiary. We hold that the *Morganton* case controls here, therefore that net capital reduction resulted from the acquisition and holding of the stock in 1945.

Reviewed by the Court.

*Decisions will be entered for the respondent.*